UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS MAHER,<br><br>        Plaintiff,<br><br>        v.<br><br>TOWN OF AYER, THE AYER POLICE<br>DEPARTMENT, NANCY TAYLOR-HARRIS a/k/a<br>NANCY TAYLOR, in her individual capacity, and<br>JOHN and JANE DOES NOS. 1-15, in their individual<br>capacities, CITY OF LOWELL, THE LOWELL<br>POLICE DEPARTMENT, EDWARD F. DAVIS III, in<br>his individual capacity, GARRETT SHEEHAN, in his<br>individual capacity, MARK T. GRANT, in his individual<br>capacity, and JOHN AND JANE DOES NOS. 16-30.<br><br>        Defendants. | Civil Action No. 06-10514-RGS |

## PLAINTIFF DENNIS MAHER'S OPPOSITION TO DEFENDANT MARK T. GRANT'S MOTION TO DISMISS AND FOR ENTRY OF SEPARATE AND FINAL JUDGMENT

Plaintiff Dennis Maher hereby submits his Opposition to Defendant Mark T. Grant's

Motion to Dismiss and For Entry of Separate and Final Judgment ("Grant's Motion"). For the

reasons set forth below, Grant's Motion should be denied as to Counts I, XI, XII and XIV.

### PRELIMINARY STATEMENT

Maher's claims arise out of his wrongful convictions in 1984 for three separate crimes

that occurred in Massachusetts: the alleged August 17, 1983 rape of a woman in Ayer, the

November 16, 1983 rape of a woman in Lowell ("Lowell Victim 1"), and the November 17,

1983 assault of another woman in Lowell ("Lowell Victim 2"). Nineteen years after his

conviction for these crimes, DNA tests were performed on semen that had been collected at the

crime scenes. The DNA tests revealed that Maher could not have committed the crimes for

which he was convicted. After a motion for new trial was granted, recognizing Maher's actual

innocence, the government filed a <u>nolle prosequi</u> as to each of the charges.  This civil action followed.

The gravamen of Maher's Complaint as it pertains to Grant is that Grant, together with the other Defendants, violated Maher's civil rights by failing to disclose the existence of seminal fluid that in 1983 could have been – and ultimately was – Maher's key to freedom.  Maher further alleges that Grant's and his co-Defendants' failure to disclose this evidence was not inadvertent, but was instead knowing, reckless or intentional.  To support this allegation, Maher references Grant's <u>undisclosed</u> handwritten notes, which reflect test results supporting the presence of seminal fluid on one of the victim's underpants.  The report Grant provided to the Lowell police three days prior to Maher's trial, however, denied the existence of seminal fluid on the underpants.

Maher asserts causes of action against Grant under 42 U.S.C. § 1983 (<u>Brady</u> violation (Count I) and conspiracy (Count XI)), and under state tort law (malicious prosecution and abuse of process (Count XII), and intentional infliction of emotional distress (Count XIV)).  For the reasons that follow, Grant's Motion should be denied as to each of these Counts.[1]

### RELEVANT FACTUAL BACKGROUND[2]

Grant's conduct alleged in the Complaint relates to Maher's prosecution for the rape of Lowell Victim 1.  After the crime was reported, the Lowell police escorted Lowell Victim 1 to Lowell General Hospital, where her pants and underpants were collected as evidence.  Complt. ¶ 42.

---

[1] Maher does not oppose Grant's Motion as to Counts V (§ 1983 malicious prosecution), XVI (negligent infliction of emotional distress), XVIII (false imprisonment), or XXII (violation of Massachusetts Civil Rights Act).

[2] The facts recited herein are only those specifically related to Grant's conduct.  Maher respectfully refers the Court to his Complaint and to Grant's memorandum of law in support of his Motion to Dismiss ("Grant's Mem." at 2-8) for a detailed recitation of the facts.

On December 9, 1983, the Lowell Police Department submitted the Lowell Victim 1 rape

kit, Lowell Victim 1's underpants, and other related material to the Commonwealth's Chemical

Laboratory for forensic testing. Id. ¶ 104. On March 5, 1984 (three days before Maher's trial

started), the Commonwealth's chemist, Grant, issued a report to the Lowell Police Department.

Id. ¶ 105. In his report, Grant stated that there was no seminal fluid or spermatozoa cells

detected on Lowell Victim 1's underpants. Id. This statement was not true. Id. ¶¶ 106-07. In

particular, Grant's statement regarding absence of seminal fluid was belied by Grant's own prior

handwritten notes prepared days earlier. These undisclosed notes, which Grant has attached to

his instant Motion papers (see Grant's Mem., Exhibit B), revealed a positive reaction for acid

phosphatase – a reaction indicative of the presence of seminal fluid.[3] See generally Complt. ¶

107.

Almost twenty years later, DNA testing confirmed what Grant had written in his

undisclosed notes – specifically, that Lowell Victim 1's underpants did contain the biology of the

perpetrator. Id. ¶ 106. If this information had been disclosed to Maher prior to his trial, he could

have used the evidence to try to demonstrate his innocence at trial. Id.

On March 8, 1984, the Commonwealth went forward with its prosecution of Maher for

the attacks on both Lowell victims. Id. ¶ 99. At the conclusion of his trial, Maher was convicted

of rape and assault and battery of Lowell Victim 1. Id. ¶ 108. He was given a sentence of 12-20

years for the rape of Lowell Victim 1. Id. His sentence for the assault and battery was 8-10

years to run concurrently. Id. Maher was also convicted of assault with intent to commit rape

and assault and battery with a dangerous weapon of Lowell Victim 2. Id. He was given a

---

[3] The Court need not consider or rely on Grant's Exhibits in deciding the Motion to Dismiss, as Maher's Complaint
sufficiently and generally alleges the conduct exposing Grant to liability. Complt. ¶ 107.

sentence of 8-10 years for the crimes against Lowell Victim 2. Id. The 8-10 year sentence was to run "on and after." Id.[4]

On or about June 27, 1986 and on or about July 25, 1986, as a result of his multiple convictions for sexually-related offenses, Maher was determined to be a "sexually dangerous person" and, consequently, Maher was committed to the Treatment Center at Bridgewater for a term of one-day-to-life. Id. ¶ 117. Maher served a majority of his term of incarceration at the Treatment Center, among many violent sex offenders. Id. ¶ 118.

Beginning as early as 1993 and for years thereafter, at times with the assistance of the Innocence Project in New York and the New England Innocence Project, pro bono organizations committed to helping wrongly convicted individuals establish their innocence through DNA testing, Maher sought to locate evidence collected in connection with the Lowell and Ayer crimes and submit that evidence for DNA testing. Id. ¶ 119. In July 2001, a law student volunteering for the New England Innocence Project, with the assistance of a Middlesex County Court Officer, located at the Middlesex County Courthouse certain evidence from Maher's case, including the pants and underpants of Lowell Victim 1. Id. ¶ 121.

Subsequent testing revealed the presence of semen on the underpants, which yielded a genetic profile that excluded Maher as the perpetrator. Id. ¶¶ 122-32. On April 3, 2003, Maher's unopposed motion for new trial was granted, the Commonwealth filed a nolle prosequi as to each of Maher's indictments, and, after serving 19 years, 2 months, and 29 days for three crimes he did not commit, Maher was released from confinement. Id. ¶¶ 139-45.

---

[4] After securing convictions for the Lowell crimes, Maher was next prosecuted for the Ayer rape. Id. ¶ 109. Two days after that trial commenced, Maher was convicted of, among other things, aggravated rape in connection with the Ayer crime. Id. ¶ 116. He was sentenced to serve a life term. Id.

## **ARGUMENT**

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a court must accept the plaintiff's sufficiently plead facts as true and grant all reasonable inferences in the plaintiff's favor." Charles v. City of Boston, 365 F. Supp.2d 82, 87 (D. Mass. 2005) (Gertner, J.) (citing Cooperman v. Individual, 171 F.3d 43, 46 (1st Cir. 1999)). "A motion to dismiss is only allowed where it is clear that the plaintiff can prove no set of facts to support his or her cognizable claim." Id. (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Where state of mind is relevant to the claim, knowledge, motive and intent may be averred generally." Id. at 87-88 (citing Educadores Puertorriquenos en Action v. Hernandez, 367 F.3d 61, 66 (1st Cir. 2004)).

After Swierkiewicz v. Sorema, 534 U.S. 506 (2002) (no heightened pleading requirement for civil rights actions; re-emphasis on basics of notice pleading) and Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (no heightened pleading requirement for § 1983 claims), a pleading asserting a § 1983 claim must set forth "minimal facts as to who did what to whom, when, where, and why – although the why, when why means the actor's state of mind, can be averred generally." Educadores Puertorriquenos en Action v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004); see also Fed. R. Civ. P. 9(b) ("[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally").

Here, as in Charles, a recent decision involving similar facts and a motion to dismiss by a forensic criminalist, "the Complaint . . . more than suffices to meet the standards of Rule 12(b)(6) and the applicable law." Charles, 365 F. Supp.2d at 88.

I.      **Grant Does Not Enjoy Qualified Immunity**
       **From Maher's Well-Pled § 1983 Allegations.**

The First Circuit has developed "a three-step process" for determining the existence or

absence of qualified immunity:

> (1) whether the claimant has alleged the deprivation of an actual constitutional
> right; (2) whether the right was clearly established at the time of the alleged
> action or inaction; and (3) if both of these questions are answered in the
> affirmative, whether an objectively reasonable official would have believed that
> the action taken violated that clearly established constitutional right.

Wilson v. City of Boston, 421 F.3d 45, 52 (1st Cir. 2005) (citing Starlight Sugar, Inc. v. Soto,

253 F.3d 137, 141 (1st Cir. 2001)).  Stated alternatively, "the qualified immunity question is

'whether a reasonable official could have believed his actions were lawful in light of clearly

established law and the information the official possessed at the time of the allegedly unlawful

conduct.'"  Charles, 365 F. Supp.2d at 89 (quoting Lowinger v. Broderick, 50 F.3d 61, 65 (1st

Cir. 1995)).  The answer here, as in Charles, "is an unequivocal 'no.'"  Id.

A.      **The Complaint Alleges That Grant Violated Maher's Constitutional Rights.**

As a threshold matter, Grant's memorandum in support of his Motion to Dismiss reflects

a misapprehension of the claims asserted against him:  "Maher seems to allege that documents

provided to the defense at trial contradicted Grant's finding that there was no seminal fluid in

Lowell Victim 1's underpants."  Grant's Mem. at 9.  The point is that the documents

contradicting Grant's statement were not provided to the defense at trial, although such

information was potentially exculpatory and could have prevented Maher's near-twenty years of

confinement for crimes he did not commit.  See Complt. ¶¶ 105-07.  Such non-disclosure of

potentially exculpatory evidence makes out a classic § 1983 claim for violation of a defendant's

rights under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, particularly when the result

was the conviction of a man who is indisputably innocent.  See Strickler v. Greene, 527 U.S.

6

263, 281-82 (1999) ("There are three components of a true <u>Brady</u> violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.").

Maher quite clearly alleges that Grant withheld information that could have led to Maher's acquittal.  Maher specifically alleges:

> 105.   On March 5, 1984 (three days before Maher's trial started), the Commonwealth's Chemist, Mark T. Grant, issued a report to the [Lowell Police Department].  In his report, Grant stated that there was no seminal fluid or spermatozoa cells detected on Lowell Victim 1's underpants.

> 106.   Grant's conclusion was contradicted by subsequent forensic testing. Specifically, subsequent analysis revealed that Lowell Victim 1's underpants <u>did</u> contain spermatozoa and biological evidence from the perpetrator.  If this information had been disclosed to Maher prior to his trial, Maher could have used this evidence to try to demonstrate his innocence at the time of his trial. The evidence that was erroneously omitted from Grant's report was, eventually, used to clear Maher's name 19 years later.

> 107.   On information and belief, Grant's March 5, 1984 report contains knowingly false statements and omissions, including the statement that no seminal fluid was detected on Lowell Victim 1's underpants, <u>which are contradicted by documents not provided to the defense at the time of trial</u>, and were made for the purpose of misleading Maher's counsel and preventing Maher to gain access to critical biological evidence that could have been used to prevent his wrongful conviction.

Complt. ¶¶ 105-07 (emphasis added).[5]  Paragraph 107 of the Complaint includes the core allegation that Grant knew that Lowell Victim 1's underpants tested positive for the presence of seminal fluid, despite what Grant later reported to the police.  While Maher did not attach to his Complaint the documents revealing the inconsistency between Grant's March 1, 1984 internal notations and his March 1, 1984 report to the police, Grant has attached those documents to his

---

[5]   Maher's Complaint also describes in detail the post-conviction forensic testing that revealed the presence of spermatozoa that contained the DNA evidence that led to Maher's exoneration. <u>See</u> Complt., ¶¶ 121-32.

Motion papers. <u>See</u> Grant's Mem., Exhibits A and B. The page of handwritten notes attached as

Grant's Exhibit A, however, is largely illegible. A legible copy (attached hereto as Exhibit 1)

reveals that on March 5, 1984, Grant determined that Lowell Victim 1's "panties" tested positive

for seminal fluid ("+APlo").[6] This internally-noted conclusion contrasts starkly to the

conclusion contained in Grant's March 5, 1984 report that "[n]o seminal fluid or sperm cells

were detected" on the victims "panties." <u>See</u> Grant's Mem., Exhibit B.

   Notwithstanding these allegations of wrongdoing, Grant seeks to diminish the role he

played in Maher's prosecution and conviction, hoping to latch on to the <u>Charles</u> court's <u>dicta</u> that

"it is true that some criminalists who have minor law enforcement roles (e.g., lab technicians

who merely test numbered vials) may not have independent <u>Brady</u> obligations." 365 F. Supp.2d

at 89. <u>See</u> Grant's Mem. at 9 ("only the chemist"), 11 ("merely a civilian chemist"), <u>id.</u> ("did no

more than forensic tests"), <u>id.</u> ("played a minor role"). The Court should not countenance

Grant's attempt to marginalize his own actions in order to avoid liability. Here, as in <u>Charles</u>,

"from the face of the Complaint, [the defendant forensic criminalist]'s role in [plaintiff]'s

prosecution was hardly insignificant." <u>Id.</u> Grant submitted his report to the police and thus to

the prosecutor just three days before Maher's criminal trial, when it was critical for the

prosecution that there be no evidence tending to exclude Maher from being the perpetrator. Had

Grant disclosed evidence of seminal fluid prior to trial, Maher could have used that evidence to

create reasonable doubt that he was the perpertrator, as the government claimed. Despite the fact

that DNA analysis was not available in the early 1980s, the semen could have been tested for

blood type that had a high likelihood of excluding Maher as the perpetrator. The non-disclosure

---

[6]  Maher believes that discovery will show that the "+APlo" notation represents a positive reaction for acid
phosphatase, which is consistent with the existence of seminal fluid.

of the forensic evidence suppressed by Grant and others precluded Maher from asserting this factual defense, and thus plainly constituted a violation of Maher's constitutional rights.

**B.** **Maher's Constitutional Rights Were Clearly Established At The Time.**

Grant makes the same argument that was rejected by the court in Charles – i.e., that Brady obligations are limited to prosecutors. See Grant's Mem. at 10 ("The so-called 'Brady duty' addresses prosecutors and not those involved in ancillary or subsidiary tasks."). The Charles court concluded that the "[forensic criminalist defendant]'s duty to disclose Brady information to the prosecutor was clearly established at the time of his investigation into the 1980 rapes." 365 F. Supp.2d at 89 (emphasis in original). As such, Grant's duty to disclose the existence of potentially exculpatory evidence – evidence that in fact led to Maher's exoneration – was most certainly clearly established four years later. Grant's failure to disclose such evidence was inexcusable, and it led to the nineteen-year imprisonment of an innocent man.

Grant's citations to cases outside the First Circuit are unavailing, since the First Circuit has recently recognized that "[t]he intentional or reckless fabrication of inculpatory evidence or omission of material exculpatory evidence by a forensic examiner in support of probable cause may amount to a constitutional violation." Burke v. Town of Walpole, 405 F.3d 66, 89 (1st Cir. 2005) (citations omitted). Grant's citation to pre-Burke cases in the Fifth and Eighth Circuits also is unavailing because Charles is the case most on point, and because Courts of Appeals other than those cited by Grant have recognized the extension of Brady obligations beyond the prosecutor to those who investigate the crime. See, e.g., Newsome v. McCabe, 256 F.3d 747, 752 (7th Cir. 2001) (clearly established in 1979 and 1980 that police could not withhold Brady evidence from prosecutor); Pierce v. Gilchrist, 359 F.3d 1279, 1287 (10th Cir. 2004) (denying forensic analyst's motion to dismiss § 1983 claims based on post-arrest fabrication of hair

sample opinion and stating:  "we cannot say that the false information supplied by [forensic chemist] and the accurate exculpatory information disregarded by [her] were not significant enough to prejudice [plaintiff's] constitutional rights"); United States v. Blanco, 392 F.3d 382, 393 (9th Cir. 2004) (the obligation to disclose under Brady "is the obligation of the government, not just the obligation of the prosecutor").  Even the court in Villasana v. Wilhoit, 368 F.3d 976, 979 (8th Cir. 2004), cert. denied 543 U.S. 1153 (2005), cited by Grant, recognized that "the duty imposed by Brady extends to evidence in the State's possession not known to the prosecutor."  In the absence of a First Circuit pronouncement to the contrary, Grant offers this Court no reason – much less a compelling one – to diverge from the conclusion reached in the Charles case.

<b>C.    An Objectively Reasonable Official Would Have Believed That Withholding Potentially Exculpatory Physical Evidence Violated A Criminal Defendant's Clearly Established Constitutional Rights.</b>

No objectively reasonable forensic chemist would believe that it was constitutional to withhold potentially exculpatory evidence from an innocent criminal defendant.  The best Grant can muster in his defense is that "it is reasonable to suppose that DNA found some 19 years later in Victim 1's underpants was no [sic] susceptible to detection in 1984."  Grant's Mem. at 9.  It is not reasonable to suppose, however, that seminal fluid detected 19 years later was not susceptible to detection and blood-type analysis in 1984.  As Maher properly has alleged, the seminal fluid was – and could have been in 1984 – susceptible to biological testing that could have proven exculpatory.

**II.    Maher's Complaint States A § 1983 Conspiracy Against Grant.**

Grant argues that Maher does not state a § 1983 conspiracy claim because there is "no allegation that Grant ever met officers Davis and/or Sheehan, or that he communicated with them

in any way." Grant's Mem. at 12.  The argument fails because at the pleading stage a § 1983

conspiracy claim does not require facts showing the existence of an express agreement:

> agreement between the conspirators – the glue of the conspiracy – can be
> inferred from all of the factual circumstances alleged.  United States v. Tormos-
> Vega, 959 F.2d 1103, 1117 (1st Cir. 1992); Earle v. Benoit, 850 F.2d 836, 843
> (1st Cir. 1988).  Plaintiff need not show an express agreement in order to state a
> claim for conspiracy.  Earle, 850 F.2d at 845; see also Limone v. Condon, 372
> F.3d 39, 49 (1st Cir. 2004) (for Rule 12(b)(6) purposes, the facts alleged in the
> complaint need only "support a plausible inference that" the alleged co-
> conspirators acted in concert).

Charles, 365 F. Supp.2d at 90.  Maher's complaint sets forth detailed factual allegations

describing the myriad ways in which the Defendants distorted and/or hid the truth in order to

convict Maher, including through the non-disclosure of key forensic evidence.  Judged by the

standards recited above, Maher's Complaint alleges more than ample circumstantial detail, at

least at the motion to dismiss stage, from which to infer an unlawful agreement among Grant and

the other law enforcement officials who are defendants in this action.  See id. at 89-90 (refusing

to dismiss § 1983 conspiracy claim against forensic criminalist who was "implicated in this

conspiracy through the withholding of physical evidence, which culminated in his false

testimony at trial"); Limone v. Condon, 372 F.3d 39, 49 (2004) (conspiracy allegations in

complaint sufficient to withstand motion to dismiss in light of factual allegations pertaining to

defendant and plausible inferences to be drawn in plaintiff's favor).

**III.    Maher's Allegations Support A Claim Against Grant
        For Malicious Prosecution And Abuse Of Process.**

To state a claim for abuse of process, a plaintiff must show that: "(1) 'process' was used,

(2) for an ulterior or illegitimate purpose; (3) resulting in damage."  Gutierrez v. Massachusetts

Bay Transportation Auth., 437 Mass. 396, 407 (2002) (citations omitted).  A claim for malicious

prosecution is similar, requiring a plaintiff to show "(1) the institution of criminal process against

the plaintiff with malice; and (2) without probable cause; and (3) the termination of the criminal

proceeding in favor of the plaintiff." Id. at 405 (citations omitted). Grant essentially conflates

the two claims, and concedes that "process was clearly used and Maher was convicted following

a trial;" Grant argues that Maher's claims fail only because "there is no allegation that would

establish Grant was involved in initiating or prosecuting that criminal process." Grant's Mem. at

14. However, it is not a prerequisite that the defendant himself or herself "initiate," "insitute" or

"instigate" the process against plaintiff. Rather,

> Even if defendants did not, by themselves, "initiate" the prosecution, a person
> "who takes an active part in continuing or procuring the continuation of criminal
> proceedings initiated . . . by another is subject to the same liability for malicious
> prosecution as if he had then initiated the proceedings."

Limone v. United States, 271 F. Supp.2d 345, 358 (D. Mass. 2003), aff'd 372 F.3d 39 (2004)

(quoting Mitchell v. City of Boston, 130 F. Supp.2d 201, 215 (D. Mass. 2001), citing

Restatement (Second) of Torts § 655 (1976)). Grant clearly took an active part in the

continuation of criminal proceedings against Maher, when he failed to disclose evidence that

could have exculpated Maher. Cf. Pierce, 359 F.3d at 1293 ("a police forensic analyst who

prevaricates and distorts evidence" "cannot 'hide behind' the fact that she neither initiated nor

filed the charges against [wrongfully convicted plaintiff]"). The deliberate withholding of such

exculpatory evidence in order to achieve the conviction of an innocent person – which is what

Maher alleges – plainly reflects the "illegitimate purpose" and "malice" elements of these claims.

## IV.    Grant Articulates No Basis Upon Which To Dismiss
## Maher's Claim For Intentional Infliction Of Emotional Distress.

Grant argues that Maher does not state a claim of emotional distress against Grant

because "Grant's alleged conduct was not extreme or outrageous." Grant's Mem. at 15. Maher

has alleged that Grant's report issued three days before trial, which claimed the absence of

seminal fluid on Lowell Victim 1's underpants, when in fact seminal fluid was present, was "knowingly false." Complt. ¶ 107. Grant's attempt to characterize his conduct as no more than negligence ignores both the facts asserted in the Complaint – which at this stage must be taken as true – and the contradictory documents that Grant attached to his own Motion papers.

In short, Maher's allegation that Grant purposefully withheld information contained in "documents not provided to the defense at the time of trial," in order to obtain a conviction of an innocent man, more than meets the standard for "extreme and outrageous" conduct. Cf. Limone, 271 F. Supp.2d at 363 ("There can be little doubt that the acts of law enforcement personnel who framed innocent men for murder give rise to a claim of intentional infliction of emotional distress under Massachusetts law.") As such, Maher's claim against Grant for intentional infliction of emotional distress should stand.

## CONCLUSION

For the foregoing reasons, Grant's Motion should be denied as to Counts I, XI, XII and XIV.

Respectfully submitted,

**DENNIS MAHER,**

By his attorney,


/s/ Robert N. Feldman
Robert N. Feldman (BBO# 630734)
BIRNBAUM & GODKIN, LLP
280 Summer Street
Boston, MA 02210-1108
Telephone: (617) 307-6100
Fax: (617) 307-6101


Dated: May 31, 2006

13

## CERTIFICATE OF SERVICE

I, Robert N. Feldman, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on May 31, 2006.

/s/ Robert N. Feldman
Robert N. Feldman