UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS MAHER,                                                        ) | |
|                                                                      ) | |
|                            Plaintiff,                                ) | |
|                                                                      ) | |
|                    v.                                                ) | |
|                                                                      ) | |
| TOWN OF AYER, THE AYER POLICE                                        ) | Civil Action No. 06-10514-RGS |
| DEPARTMENT, NANCY TAYLOR-HARRIS a/k/a                                ) | |
| NANCY TAYLOR, in her individual capacity, and                        ) | |
| JOHN and JANE DOES NOS. 1-15, in their individual                    ) | |
| capacities, CITY OF LOWELL, THE LOWELL                               ) | |
| POLICE DEPARTMENT, EDWARD F. DAVIS III, in                           ) | |
| his individual capacity, GARRETT SHEEHAN, in his                     ) | |
| individual capacity, MARK T. GRANT, in his individual                ) | |
| capacity, and JOHN AND JANE DOES NOS. 16-30.                         ) | |
|                                                                      ) | |
|                            Defendants.                               ) | |

**PLAINTIFF DENNIS MAHER'S OPPOSITION TO
THE LOWELL DEFENDANTS' MOTION TO DISMISS
AND FOR ENTRY OF SEPARATE AND FINAL JUDGMENT**

DENNIS MAHER,

By his attorney,

Robert N. Feldman (BBO# 630734)
BIRNBAUM & GODKIN, LLP
280 Summer Street
Boston, MA  02210-1108
Telephone:  (617) 307-6100
Fax:  (617) 307-6101

Dated:  August 18, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................1

RELEVANT FACTUAL BACKGROUND .......................................................................2

ARGUMENT......................................................................................................................5

    I.    Collateral Estoppel Does Not Bar Maher's Claims...............................................6

    II.    None of Maher's Claims Can Be Dismissed On Statute
        Of Limitations Grounds.........................................................................................11

        A.    § 1983 Claims...........................................................................................12

        B.    Tort Claims................................................................................................13

        C.    MCRA Claim.............................................................................................14

    III.    Maher's Complaint Sufficiently Alleges Claims Upon
        Which Relief May be Granted Against The Lowell Defendants...........................15

        A.    § 1983 Claims...........................................................................................15

        B.    Tort Claims................................................................................................19

        C.    MCRA Claim.............................................................................................19

CONCLUSION .................................................................................................................20

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                          <u>**Page(s)**</u>

<u>Abany v. Fridovich</u>,
    862 F. Supp. 615 (D. Mass. 1994) ................................................................18

<u>Aetna Casualty & Surty Co. v. Niziolek</u>,
    395 Mass. 737 (1985)................................................................................6-7

<u>Allen v. McCurry</u>,
    449 U.S. 90 (1980)......................................................................................6

<u>Batiste v. City of Boston</u>,
    No. 93-2233, 1994 WL 164568 (1st Cir. May 2, 1994) ..........................................13

<u>Bennett v. Federal Bureau of Investigation</u>,
    278 F. Supp. 2d 104 (D. Mass. 2003) ..............................................................12

<u>Britton v. Maloney</u>,
    901 F. Supp. 444 (D. Mass. 1995) ............................................................18, 19

<u>Charles v. City of Boston</u>,
    365 F. Supp. 2d 82 (D. Mass. 2005) ............................................................5, 18

<u>Commonwealth v. Kent K.</u>,
    427 Mass. 754 (1998)..........................................................................7-8, 16

<u>Commonwealth v. Mah[e]r</u>,
    321 Mass. App. Ct. 307 (1985)....................................................................4, 9

<u>Cuddy v. City of Boston</u>,
    765 F. Supp. 775 (D. Mass. 1991) ..................................................................18

<u>Demoulas v. Demoulas</u>,
    No. 902344B, 1993 WL 818620 (Mass. Super. Oct. 4, 1993)....................................14

<u>Educadores Puertorriquenos en Action v. Hernandez</u>,
    367 F.3d 61 (1st Cir. 2004) ................................................................5, 16, 18

<u>Frank Cooke, Inc. v. Hurwitz</u>,
    10 Mass. App. Ct. 99 (1980)........................................................................14

<u>Guzman-Rivera v. Rivera-Cruz</u>,
    29 F.3d 3 (1st Cir. 1994) ............................................................................12

Guzman-Rivera v. Rivera-Cruz,
    55 F.3d 26 (1st Cir. 1995) ...................................................................................17

Haring v. Prosise,
    462 U.S. 306 (1983) ...........................................................................................10

Heck v. Humphrey,
    512 U.S. 477 (1994) ..............................................................................11, 12, 15

In re Lupron Marketing and Sales Practices Litigation,
    295 F. Supp. 2d 148 (D. Mass. 2003) .................................................................13

Johnson v. Mahoney,
    424 F.3d 83 (2005) ...................................................................................6, 7-8, 16

Lawson v. Affirmative Equities Co., L.P.,
    341 F. Supp. 2d 51 (2004) ..................................................................................13

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,
    507 U.S. 163 (1993) .......................................................................................15-16

Limone v. United States,
    271 F. Supp. 2d 345 (D. Mass. 2003) .............................................................5, 19

Limone v. United States,
    336 F. Supp. 2d 18 (D. Mass. 2004) ..................................................................12

Lombard v. Salisbury Police Dept.,
    No. 942937B, 1995 WL 1146874 (Mass. Super. June 14, 1995) ........................14-15

Maggio v. Gerard Freezer & Ice Co.,
    824 F.2d 123 (1st Cir. 1987) ..............................................................................14

Marino v. Gammel,
    191 F. Supp. 2d 243 (D. Mass. 2002) ...........................................................12, 13

McGrath v. MacDonald,
    853 F. Supp. 1 (D. Mass. 1994) .........................................................................18

Messere v. Murphy,
    32 Mass. App. Ct. 917 (1992) ............................................................................15

Mitchell v. City of Boston,
    130 F. Supp. 2d 201 (D. Mass. 2001) ...........................................................12, 15

Moriarty v. O'Connell,
    No. 001181, 2005 WL 1812513 (Mass. Super. June 30, 2005)................................................14

Nevada v. United States,
    463 U.S. 110 (1983)......................................................................................................6

Nieves v. McSweeeny,
    241 F.3d 46 (1st Cir. 2001)....................................................................................13, 18

Pinshaw v. Metropolitan Dist. Comm'n,
    402 Mass. 687 (1988)..................................................................................................19

Sena v. Commonwealth,
    417 Mass. 250 (1994)...................................................................................................6

Swierkiewicz v. Sorema,
    534 U.S. 506 (2002)....................................................................................................15

United States v. Mavroules,
    819 F. Supp. 1109 (D. Mass. 1993) .............................................................................13

Vazquez v. Metropolitan Dade County,
    968 F.2d 1101 (11th Cir. 1992)....................................................................................10

Wyniemko v. Ostin,
    No. 03-CV-74749-DT, slip op. (E.D. Mich. Mar, 3, 2005) .............................................passim

## Statutes

42 U.S. C. § 1983 ..................................................................................................passim

M.G.L. ch. 12 § 11I ......................................................................................................2

M.G.L. ch. 260 § 12........................................................................................................14

## Treatises

18B Wright & Miller § 4474, at 420 (2d ed. 2002)...........................................................6

Plaintiff Dennis Maher hereby submits his Opposition to Defendants City of Lowell, the Lowell Police Department, Edward F. Davis III, Garrett Sheehan, and John and Jane Does 16-30's (collectively, "Defendants") Motion to Dismiss (the "Motion").  For the reasons set forth below, the Motion should be denied.

## PRELIMINARY STATEMENT

Maher's claims arise out of his wrongful convictions in 1984 for three separate crimes: the alleged August 17, 1983 rape of a woman in Ayer, the November 16, 1983 rape of a woman in Lowell ("LV1"), and the November 17, 1983 assault of another woman in Lowell ("LV2"). Nineteen years after his conviction for these crimes, DNA tests were performed on semen that had been collected at the crime scenes.  The DNA tests revealed that Maher did not commit these crimes.  After a motion for new trial was granted, recognizing Maher's actual innocence, the government filed a nolle prosequi as to each of the charges on April 3, 2003.  This civil action followed, commencing on March 22, 2006.

Maher alleges that the Defendants, together with other Defendants, violated Maher's civil rights by failing to disclose evidence, fabricating evidence, deliberately failing to investigate, and utilizing unduly suggestive identification techniques.  Maher further alleges that these acts were not inadvertent, but were instead knowing, reckless or intentional.  As explained in detail below, Maher's claims are not barred by rules of preclusion or statutes of limitations, and each of Maher's claims is sufficiently pled to pass muster at the motion to dismiss stage.

Maher asserts causes of action against the Defendants under *42 U.S.C. § 1983* (Brady violation, fabrication of evidence, and failure to investigate (Count I), unduly suggestive identification procedures (Count III), malicious prosecution (Count V), Monell claim against municipality (Count VII), supervisory liability against Doe defendants (Count X) and conspiracy (Count XI)), under *state tort law* (malicious prosecution and abuse of process (Count XII), intentional infliction of emotional distress (Count XIV), negligent infliction of emotional distress

1

(Count XVI), false imprisonment (Count XVIII), and claim against municipality for negligent training and supervision (Count XX)), and under the *Massachusetts Civil Rights Act, M.G.L. ch. 12 § 111.* For the reasons that follow, the Defendants' Motion should be denied.

## RELEVANT FACTUAL BACKGROUND[1]

On November 16, 1983, LV1 was raped. Complt. ¶ 34. Shortly thereafter that same evening, LV1 was taken to the hospital, and Defendants Davis and Sheehan were informed that the rape had occurred at 5:20 p.m. Id. ¶ 43. This information was recorded in a written report that was never disclosed to Maher's counsel during the criminal proceedings against him. Id. At the hospital, LV1's pants and underpants were collected as evidence. Id. ¶ 42. Subsequently, the Lowell Police Department submitted the LV1 rape kit, LV1's underpants, and other related material to the Commonwealth's Chemical Laboratory for forensic testing. Id. ¶ 104.

On November 17, 1983, at around 5:30 p.m., LV2 was attacked. Id. ¶ 46. Later that evening, Maher, an army sergeant with no prior criminal record, was approached by Defendant Davis, who stopped Maher and then arrested Maher for possession of marijuana. Id. ¶¶ 55-56. Defendants Davis and Sheehan then questioned Maher concerning his whereabouts earlier in the evening, and on the prior day. Id. ¶ 64. The Defendants did not initially tell Maher why he was being asked these questions; when they finally did, and Maher demanded a lawyer, Davis told Maher that he was going to "take Maher down," and see to it that Maher would be convicted of the Lowell attacks. Id. ¶¶ 68-70.

Maher informed Davis and Sheehan that the prior day, he was at the Fort Devens army base, where he completed his official duties at 4:30 p.m. and then met with his Commanding Officer until 5:15. Id. ¶ 65. Maher provided contact information for his Commanding Officer so

---

[1] The facts recited herein are only those specifically related to conduct on the part of the Lowell Defendants. Maher respectfully refers the Court to his Complaint for a detailed recitation of all the facts supporting his case.

that the Defendants could confirm his statement, but the Defendants never followed through –
because they were intent on convicting Maher, not exonerating him.  Id. ¶¶ 66, 84, 101-02.

On November 18, 1983, LV2 was escorted to the Lowell County Courthouse, with the
expectation that she would there identify Maher as her attacker.  Id. ¶ 71.  As it turned out, LV2
did not identify Maher, but instead selected another man as the person who most resembled her
assailant.  Id. ¶¶ 72-73.  After LV2 did not identify Maher, the Defendants cancelled their plans
to have LV1 come to the courtroom to make an identification attempt.  Id. ¶ 74.  LV2 did not
identify Maher as her assailant until December 23, 1983, when she picked him out of a line-up of
six men, and out of those six men, Maher was the only one with a chair placed in front of him.
Id. ¶ 86.

Not until November 20, 1983, did Davis and Sheehan prepare a report recounting their
discussions with Maher and the Lowell Victims.  Id. ¶ 77.  The report contained at least two false
statements that directly contradicted information known to Davis and Sheehan.  First, the report
indicated that Maher had said he finished work at 4:30 p.m. on November 16 and went directly
home (omitting the fact that, as Maher had stated, he was in his Commanding Officer's office
until 5:15 p.m.).  Id. ¶ 82.  Second, the report indicated that the rape of LV1 occurred at 5:40
p.m. (contrary to LV1's near-contemporaneous statement, memorialized in hospital records, that
the rape occurred at 5:20 p.m.).  Id. ¶ 83.  The Defendants did not disclose the accurate
information regarding the timing of events to defense counsel, instead proffering the false
evidence that Maher left work at 4:30 p.m., giving him plenty of time to travel the 20 miles from
Fort Devens to arrive at the scene of the rape in Lowell at 5:40.  Id. ¶¶ 35, 81-83.

On March 5, 1984 (three days before Maher's trial started), the Commonwealth's
chemist, Mark T. Grant, issued a report to the Lowell Police Department.  Id. ¶ 105.  The report
stated that there was no seminal fluid or spermatozoa cells detected on LV1's underpants.  Id.
This statement was not true.  Id. ¶¶ 106-07.  The report's statement regarding absence of seminal

fluid was belied by prior handwritten notes that were never disclosed to Maher's counsel during the criminal proceedings against him, and which indicated the presence of seminal fluid on LV1's underpants. Id. ¶ 107. Almost twenty years later, DNA testing confirmed what Grant had written in his undisclosed notes – specifically, that LV1's underpants did contain the biology of the perpetrator. Id. ¶ 106. If this information had been disclosed to Maher prior to his trial, he could have used the evidence to try to demonstrate his innocence at trial. Id.

On March 8, 1984, the Commonwealth went forward with its prosecution of Maher for the attacks on both Lowell victims. Id. ¶ 99. At the conclusion of his trial, Maher was convicted and sentenced to over 20 years in prison. Id. ¶ 108.[2] On December 24, 1985, the state Appeals Court issued its decision affirming the judgments of Maher's convictions for the Lowell attacks. See Commonwealth v. Mah[e]r, 21 Mass. App. Ct. 307 (1985). The Appeals Court expressly addressed three specific issues, holding that: (1) the evidence at trial of intent to rape was sufficient to avoid a motion for required finding of not guilty on the question of intent (id. at 313-15); (2) the trial properly included both Lowell incidents, given that a motion to sever was never made and in any event would not likely have succeeded (id. at 316-18); and (3) Maher's claim for ineffective assistance of counsel was without merit (id. at 318-19).

On January 8, 1990, while in confinement, Maher filed a pro se Petition for Post-Conviction Relief under Mass. R. Crim. P. 30(b), in which he touched on issues relating to unduly suggestive identification, evidence of a report of a condom that was not disclosed to the defense, unconstitutional stop, search and seizure, and ineffective assistance of counsel. See Defs.' Mem., Ex. D. On April 17, 1990, Judge Barton summarily rejected Maher's Petition, stating in full: "The Court 'refuses to act.' Motion raises no questions which could not have been raised in original appeal. See 21 Mass. App. Ct. 307 (1985)." Id.

---

[2] After securing convictions for the Lowell crimes, Maher was next prosecuted for the Ayer rape. Id. ¶ 109. Two days after that trial commenced, Maher was convicted of, among other things, aggravated rape in connection with the Ayer crime. Id. ¶ 116. He was sentenced to serve a life term. Id.

Eleven years later, in July 2001, a law student volunteering on Maher's behalf located certain evidence from Maher's case, including the pants and underpants of LV1. Id. ¶ 121. Subsequent testing of the underpants – the same underpants which Maher had been told lacked biological evidence, despite internal notes to the contrary – revealed the presence of semen, which yielded a genetic profile that excluded Maher as the perpetrator. Id. ¶¶ 122-32. On April 3, 2003, Maher's unopposed motion for new trial was granted, the Commonwealth filed a nolle prosequi as to each of Maher's indictments, and, after serving 19 years, 2 months, and 29 days for three crimes he did not commit, Maher was released from confinement. Id. ¶¶ 139-45.

## ARGUMENT

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a court must accept the plaintiff's sufficiently plead facts as true and grant all reasonable inferences in the plaintiff's favor." Charles v. City of Boston, 365 F. Supp. 2d 82, 87 (D. Mass. 2005) (citing Cooperman v. Individual, 171 F.3d 43, 46 (1st Cir. 1999)). "A motion to dismiss is only allowed where it is clear that the plaintiff can prove no set of facts to support his or her cognizable claim." Id. (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Where state of mind is relevant to the claim, knowledge, motive and intent may be averred generally." Id. at 87-88 (citing Educadores Puertorriquenos en Action v. Hernandez, 367 F.3d 61, 66 (1st Cir. 2004)). Applying these principles here, "the allegations are more than sufficiently specific to allow the case to proceed at this stage of the litigation." Limone v. United States, 271 F. Supp. 2d 345, 368 (D. Mass. 2003).

## I.   Collateral Estoppel Does Not Bar Maher's Claims.[3]

Collateral estoppel "can be used only to prevent 'relitigation of issues actually litigated' in a prior lawsuit." Nevada v. United States, 463 U.S. 110, 130 n.11 (1983) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979)). See also Sena v. Commonwealth, 417 Mass. 250, 260 (1994) ("Issues precluded under this doctrine must have been actually litigated in the first action, and determined by a final judgment on the merits.") (citations omitted); Home Owners Fed. Sav. & Loan Ass'n v. Northwestern Fire & Marine Ins. Co., 354 Mass. 448, 455 (1968) (findings may provide basis for collateral estoppel only if "the product of full litigation and careful decision"). Maher does not dispute that in the appropriate case, issue preclusion based on prior criminal proceedings can be asserted to bar a civil rights plaintiff's claims. See, e.g., Allen v. McCurry, 449 U.S. 90 (1980); Johnson v. Mahoney, 424 F.3d 83 (2005). This is not such a case, however, because the allegations now asserted were not actually litigated and decided in Maher's criminal matters.

In determining whether collateral estoppel should be applied against a former criminal defendant in subsequent civil litigation, "[f]airness is the decisive consideration." Aetna Casualty & Surty Co. v. Niziolek, 395 Mass. 737, 745 (1985). This is not a case like Niziolek, where the criminal defendant was convicted of arson and burning insured property, and collateral estoppel was invoked to prevent re-litigation of the key issue in the subsequent civil case brought by Aetna to recover insurance proceeds:

> The jury's guilty verdict established conclusively against Niziolek that, with the intent to injure or defraud Aetna, Niziolek caused his house to be burned. An insurer "is not liable for a fraudulent loss, due to the intentional destruction of property by the insured." Todd v. Traders & Mechanics Ins. Co., 230 Mass. 595,

---

[3]  The Defendants' intimation that claim preclusion prevents Maher's claims (see Defs.' Mem. at 3) is a non-starter, since it is hornbook law that "[c]laim preclusion does not extend from criminal prosecutions to civil actions. Our traditional division between civil and criminal procedure does not contemplate any opportunity for joining any civil claim with the criminal prosecution. Thus it is manifest that a different claim or cause of action is involved in a subsequent civil action between private parties, or in an action brought by the criminal defendant against the government." 18B Wright & Miller § 4474, at 420 (2d ed. 2002) (citations omitted). Therefore, Maher responds above only as to issue preclusion.

> 599 (1918). Niziolek's conviction for burning insured property requires a judgment for Aetna in this case.

Id. at 747. Instead, the instant case presents a much more difficult question, namely whether a person who indisputably is innocent but nevertheless was convicted of a crime should be permitted the opportunity to prove that the concealed, deliberate and unconstitutional acts of government officials were the driving force behind his wrongful conviction.

The Defendants rely principally on Johnson v. Mahoney, 424 F.3d 83 (2005) in support of their argument that Maher should be collaterally estopped from pursuing his claims. Johnson, however, is easily distinguishable. In Johnson, the plaintiff was a former criminal defendant who was found delinquent by reason of first degree murder under the then-existing procedure in Massachusetts for prosecution of juveniles. After a bench trial in which the judge found Johnson delinquent, he exercised his right to a de novo jury trial. See id. at 85-86. In the middle of the jury trial, on the day before the Commonwealth rested, the prosecutor learned of and disclosed for the first time police reports summarizing exculpatory statements made by Johnson and his mother on the day Johnson was arrested. See id. at 87. The § 1983 defendant-police officers were witnesses in the jury trial and were questioned about the reports and their untimely disclosure. Johnson and his mother also testified in the jury trial regarding the alibi that had been reflected in the previously undisclosed police reports (they had not testified in the bench trial). The jury found Johnson delinquent by reason of murder, and the Supreme Judicial Court thereafter "affirmed the adjudication, ruling that the failure to turn over the police reports summarizing the statements when originally requested did not prejudice Johnson." Id. at 88 (citing Commonwealth v. Kent K., 427 Mass. 754 (1998)). In Kent K., the SJC held that Johnson had not been prejudiced by the lack of timely disclosure because his statement "'contains only a generic denial of the accusations against him, which is inadmissible evidence

. . . and hearsay evidence . . . that would not have helped [Johnson] at his bench trial or at his trial by jury.'" Id. (quoting Kent K., 427 Mass. at 758-59).[4]

The precise issue that was presented to and decided by the SJC in Kent K. was the issue of prejudice, which was an element of Johnson's subsequent civil rights claim:

> The prejudice the SJC sought to assess in Kent K. was whether the withholding of the report materially harmed Johnson's chances of prevailing at his bench trial. . . . Thus regardless of the label attached to the police misconduct, the significant issue – whether there was resulting prejudice in fact – was adjudicated and decided adversely to Johnson by the SJC, precluding its relitigation now.

Id. at 95. Because the ultimate issue in Johnson – i.e., whether Johnson's constitutional rights had been violated by late disclosure of the report – was fully litigated and specifically addressed by the SJC as part of his criminal case, Johnson was precluded from re-litigating the very same issue in his subsequent civil case.

Here, by contrast, the significant issue of the Defendants' concealed misconduct raised by Maher's present allegations, or whether there was resulting prejudice, has not previously been litigated or decided by any court. Specifically, Maher alleges that the Defendants manipulated evidence and the investigative process in order to secure a conviction of Maher, including by:

- not disclosing to defense counsel that, approximately two hours after the rape occurred, LV1 informed hospital personnel as well as Defendants Davis and Sheehan that the rape occurred at 5:20 p.m.  See Complt. ¶ 83;

- falsifying an arrest report, prepared four days after the attack on LV1, and after Defendants knew Maher's alibi, to state that LV1 had indicated that the rape occurred at 5:40 p.m., and that Maher had said that on November 16, he left work at 4:30 p.m. and went directly home, when in fact Maher from the beginning unequivocally told Defendants that he had met with his commanding officers at Fort Devens until 5:15 that day – an alibi which could easily have been verified, but deliberately was not. Id. ¶¶ 79-84;

- failing to disclose to defense counsel the existence of seminal fluid that could have been – and ultimately was – Maher's key to freedom. Id. ¶¶ 105-07;

---

[4] "The SJC also found . . . [p]ragmatic support for the lack of prejudice . . . in Johnson's conviction by the jury in the second trial even though, by then, the withheld police report had been turned over to the defense, and Johnson, his mother and his grandmother had all testified that Johnson was in his room at home on the night of the shooting." Johnson, 424 F.3d at 91.

- canceling an expected "show-up" courtroom identification of Maher by LV1, after LV2 selected someone other than Maher as the person who most resembled her assailant. Id. ¶¶ 71-74; and

- after the first failed attempted identification, placing a chair in front of Maher at a second, six-man line-up for LV2 to identify Maher. Id. ¶ 86.

The Defendants manipulated the evidence and investigative process as described above in order to undermine the alibi that Maher proffered when initially questioned about his whereabouts on November 16, 1983, and to ensure that the government had identification evidence (in the absence of any actual physical forensic evidence) linking Maher to the crimes. These questions of undisclosed and fabricated evidence, and abuse of the investigative process – which relate to the Defendants' conduct, not Maher's conduct – were never before the court in Maher's criminal matter, but form the centerpiece of the present action as it pertains to the Lowell Defendants.

The Defendants nevertheless argue that these questions were actually litigated and decided during the criminal proceedings against Maher – specifically, they argue that the Massachusetts Appeals Court decision in Commonwealth v. Mah[e]r, 21 Mass. App. Ct. 307 (1985), Judge Barton's March 20, 1984 decision denying Maher's Motion to Suppress Evidence (the "March 20, 1984 Decision"), and Judge Barton's summary "refus[al] to act" on Maher's Petition for Post-Conviction Relief reflect prior, actual litigation and decision of the issues now raised by Maher in his civil rights suit. See Defs.' Mem. at 5. It is true, of course, that in its Mah[e]r decision, the Appeals Court recited facts regarding the timing of the LV1 attack, Maher's alibi, and his identification by the victims, but the decision is completely devoid of any reference to the acts of members of the Lowell Police Department who secured a wrongful conviction against Maher, and who altered evidence and manipulate identification line-ups in order to achieve that goal. Those issues were simply never addressed, as the litigated issues were limited to Maher's three claims that: (1) the requisite intent had not been proven at trial; (2) the trial should have been severed; and (3) he received ineffective assistance of counsel.

Defendants also cite Judge Barton's March 20, 1984 Decision as the basis for precluding Maher's claims in the instant civil rights action. Defendants' argument again misses the mark

because the March 20, 1984 Decision concerned Maher's "conten[tion] that his arrest was illegal because it was without probable cause and that his property was wrongfully seized because it was found in an unlawful search." Defs.' Mem., Ex. B at 1. The issues addressed in the March 20, 1984 Decision revolved solely around the questions of whether Maher's stop and subsequent arrest for possession of marijuana were lawful, and whether items taken from Maher's car in a warrantless search were lawfully seized. In answering both of these questions affirmatively, Judge Barton did not address the issues now raised by Maher in this civil rights action, viz.– the conduct of Defendants in manipulating evidence *after* Maher was stopped and *after* the items were seized from his car.

Finally, Judge Barton's "refus[al] to act" on Maher's pro se Petition for Post-Conviction Relief cannot serve as the basis to preclude the civil rights claims he now seeks to pursue. A refusal to act is hardly tantamount to the actual litigation and decision required for collateral estoppel to apply.

Under these circumstances, application of collateral estoppel to bar Maher's civil rights claims would be unfair and inappropriate. See Haring v. Prosise, 462 U.S. 306, 313 n.6 (1983) ("collateral estoppel effect is not appropriate when 'controlling facts or legal principles have changed significantly since the state-court judgment,' or when 'special circumstances warrant an exception to the normal rules of preclusion'") (quoting Montana v. United States, 440 U.S. 147, 155 (1979)); Vazquez v. Metropolitan Dade County, 968 F.2d 1101, 1108 (11th Cir. 1992) (in § 1983 suit alleging use of excessive force, reversing application of collateral estoppel based on plaintiff's conviction by jury verdict in prior criminal case, and observing generally that, "as a matter of Florida law as well as federal law, collateral estoppel is not appropriate when an issue forming the basis for a civil suit was not necessarily resolved in a prior criminal proceeding").

Wyniemko v. Ostin, an unpublished opinion of the United States District Court for the Eastern District of Michigan, is instructive. See No. 03-CV-74749-DT, slip op. (E.D. Mich.

Mar., 3, 2005).[5] After being exonerated through DNA evidence of his conviction for rape, Wyniemko filed a civil rights action alleging claims very similar to those Maher alleges here, specifically that the defendants "(i) inadequately investigated the case, (ii) conducted a procedurally improper line-up, (iii) arrested Plaintiff without probable cause, (iv) held improper meetings with two witnesses and manipulated their testimony, and (v) withheld exculpatory and impeaching information from Plaintiff." Id. at 2. In its decision denying defendants' motion for summary judgment, the court addressed the collateral estoppel issue, concluding:

> there are several instances on the record where the Defendants failed to provide plaintiff with impeaching or exculpatory evidence. . . . As such, the Court concludes that Plaintiff did not have a full and fair opportunity to litigate these issues at trial, on appeal or in his habeas corpus petition. For the reasons stated, the Court finds that neither collateral estoppel nor res judicata operates to bar Plaintiff's claims that Defendants maliciously prosecuted Plaintiff following his arrest.

Id. at 30. The same result should be obtained here: Maher should be permitted to pursue his claims, which are grounded on facts that have neither been litigated nor subject to discovery.

## II.  None Of Maher's Claims Can Be Dismissed On Statute Of Limitations Grounds.

The Defendants properly concede that Maher's claims related to malicious prosecution (Counts V, XI, and XII) were brought within the applicable statute of limitations. See Heck v. Humphrey, 512 U.S. 477 (1994). The Defendants argue that Maher's remaining claims are time-barred. Because the statute of limitations analysis depends on factual inquiry that cannot be resolved on a motion to dismiss, the Defendants' argument must fail.

Maher agrees that the applicable statute of limitations for each of his claims is three years. The operative questions here are when each cause of action accrued, and whether Maher can prove no set of facts that would toll the limitations period.

---

[5] All unpublished opinions cited are submitted herewith alphabetically in an Appendix of Unpublished Opinions.

A.    **§ 1983 Claims**

"[F]ederal law controls the accrual of section 1983 claims." Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 5 (1st Cir. 1994) (citation omitted). In Heck v. Humphrey, the Supreme Court explained that:

> in order to recover for damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . . [Thus,] a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

Heck, 512 U.S. at 486-87, 490. See also Mitchell v. City of Boston, 130 F. Supp. 2d 201, 209 (D. Mass. 2001) ("Prior to Mitchell's exoneration in 1997, any § 1983 claim seeking damages for the deprivation of his right to a fair trial would have required a civil collateral attack on the validity of his conviction and would have thereby been barred by Heck.") (emphasis added). Here, the limitations period began to run when Maher's conviction was invalidated on April 3, 2003, the date that the Commonwealth filed its nolle prosequi as to each of Maher's indictments.[6] Maher timely filed his civil rights action within three years of that date, on March 22, 2006.

---

[6] Even if the Heck rule did not govern all of Maher's § 1983-based claims, questions of fact would exist as to whether the statute of limitations was tolled by Defendants' concealment of evidence from Maher. "The doctrine of equitable tolling suspends the running of a statute of limitations 'if a plaintiff, in the exercise of reasonable diligence, could not have discovered information essential to the suit.'" Bennett v. Federal Bureau of Investigation, 278 F. Supp. 2d 104, 119 (D. Mass. 2003) (quoting Gonzalez v. United States, 284 F.3d 281, 291 (1st Cir. 2002)). Similarly, "[t]he closely related doctrine of fraudulent concealment is available 'where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part.'" Id. (quoting Gonzalez, 284 F.3d at 292). Here, the Defendants' undisclosed malfeasance prevented Maher from learning the facts necessary to gain knowledge of his cause of action. Whether by reason of equitable tolling or fraudulent concealment, the limitations period could not have been triggered until Defendants' undisclosed acts came to light. See Limone v. United States, 336 F. Supp. 2d 18, 48 (D. Mass. 2004) (tolling statute of limitations for claim of wrongfully convicted defendant until information disclosed at trial "was finally made available"). At a minimum, questions of fact outside the four corners of the Complaint preclude dismissal on statute of limitations grounds at this time. See Marino v. Gammel, 191 F. Supp. 2d 243, 253-54 (D. Mass. 2002) (in Bivens action alleging that defendant federal agents had implanted electronic tracking device in plaintiff, question of equitable tolling could not be resolved on motion to dismiss).

In general, under First Circuit law, a § 1983 claim accrues when the plaintiff "knows or has reason to know of the injury that is the basis for the claims." Marino v. Gammel, 191 F. Supp. 2d 243, 253 (2002) (citing Nieves v. McSweeeny, 241 F.3d 46, 52 (1st Cir. 2001); Brackett v. United States, 270 F.3d 60, 68 n.4 (1st Cir. 2001)).  Maher alleges that the Defendants deliberately withheld and fabricated evidence and that he could not have known of the actionable conduct he alleges on the part of Defendants because they concealed their conduct.

"Whether a plaintiff knew or should have known of an injury so as to trigger the running of a statute of limitations is, with rare exception, a jury issue." Lawson v. Affirmative Equities Co., L.P., 341 F. Supp. 2d 51, 68 (2004) (citing Santiago Hodge v. Parke Davis & Co., 909 F.2d 628, 633 (1st Cir. 1990) ("The determination of when appellees had knowledge of 'both the injury and its connection with the act of a defendant,' is a question of fact."); Riley v. Presnell, 409 Mass. 239, 240 (1991) ("the question when a plaintiff knew or should have known of his cause of action is one of fact which in most instances will be decided by the trier of fact")). Cf. Guzman-Rivera, 29 F.3d at 4 ("summary judgment was improvidently granted on the limitations defense because a trialworthy issue existed as to the date on which the section 1983 claim accrued").  Accordingly, the statute of limitations issue cannot be determined on the pleadings.[7]

**B.      Tort Claims**

The First Circuit has recognized the application of the "discovery rule" of accrual for state tort claims:

---

[7] The Defendants rely exclusively on Batiste v. City of Boston, No. 93-2233, 1994 WL 164568 (1st Cir. May 2, 1994), to support their argument that Maher's § 1983 claims are time-barred. "However, as an unpublished opinion, [Batiste] may not be cited under the First Circuit's Loc. R. 36 as authority in an unrelated case." In re Lupron Marketing and Sales Practices Litigation, 295 F. Supp. 2d 148, 169 n.20 (D. Mass. 2003); see also United States v. Mavroules, 819 F. Supp. 1109, 1118 n.1 (D. Mass. 1993) (refusing to consider unpublished First Circuit decision cited by defendant, "in direct violation of First Circuit Local Rule 36"). Under First Circuit Local Rule 36(c), "a panel's decision to issue an unpublished opinion means that the panel sees no precedential value in that opinion." Even if Batiste could be cited as authority, it would be distinguishable because, unlike Maher here, "Batiste ha[d] made no factual allegations that would warrant extending the limitations period." Batiste, 1994 WL 164568, at *2.

> Although in Massachusetts an action in tort generally accrues at the time of the plaintiff's injury, there is a well established exception for actions based on "inherently unknowable" wrongs. Under this exception, such actions accrue when the injured party knew, or in the exercise of reasonable diligence, should have known the factual basis for the cause of action.

Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 130 (1st Cir. 1987) (citations omitted). In a similar vein, the Massachusetts rule of tolling for fraudulent concealment is prescribed by statute: "If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action." M.G.L. ch. 260 § 12. Thus, "if the wrongdoer, either through actual fraud or in breach of a fiduciary duty of full disclosure, keeps from the person injured knowledge of the facts giving rise to a cause of action and the means of acquiring knowledge of such facts," the statute of limitations may be tolled. Frank Cooke, Inc. v. Hurwitz, 10 Mass. App. Ct. 99, 106 (1980). As with tolling under federal doctrines, see supra, at a minimum, factual issues regarding the Defendants' non-disclosure prevent application of a time bar to Maher's claims on the facts alleged in his Complaint. See Moriarty v. O'Connell, No. 001181, 2005 WL 1812513, at *3 n.2 (Mass. Super. June 30, 2005) ("Given that O'Connell invokes the discovery rule and the doctrines of continuing representation, fraudulent concealment, and repudiation of the trust with respect to many of her counterclaims, the statute of limitations issue is more appropriately addressed via summary judgment.") (citing Murphy v. Smith, 411 Mass. 133, 136-38 (1991)); Demoulas v. Demoulas, No. 902344B, 1993 WL 818620, at *11 (Mass. Super. Oct. 4, 1993) ("whether the statute was tolled . . . because of the discovery rule, or because of the fraudulent concealment statute, G.L.c. 260, § 12, are questions of fact to be determined at trial.") (citing McGuinness v. Cotter, 412 Mass. 617, 627 (1992)).

### C.   MCRA Claim

In Lombard v. Salisbury Police Dept., No. 942937B, 1995 WL 1146874, at *3 (Mass. Super. June 14, 1995), the Massachusetts Superior Court "conclud[ed] that the Massachusetts

Civil Rights Acts adopt a limitation similar to that announced in Heck v. Humphrey." But see

Mitchell, 130 F. Supp. 2d at 214 (relying on pre-Heck case Messere v. Murphy, 32 Mass. App.

Ct. 917, 918 (1992), in granting motion for summary judgment as to MCRA claims on statute of

limitations grounds).[8]  Applying the Lombard court's conclusion to this case, Maher's MCRA

claim accrued on April 3, 2003, and was timely filed.

**III.    Maher's Complaint Sufficiently Alleges Claims Upon
       Which Relief May Be Granted Against The Lowell Defendants.**

The Defendants' alternative arguments for dismissal are without merit.  Maher alleges

that the Defendants withheld information that could have led to Maher's acquittal, including:  a

statement shortly after the victim's attack regarding the time of the attack, which would have

strengthened Maher's alibi, and forensic evidence that Maher could have used in his defense.

See Complt. ¶¶ 83, 105-07.  Maher further alleges that Defendants falsified a police report to list

the time of attack as being 5:40, when the victim initially indicated 5:20, and to omit the

statement by Maher in his initial interrogation that he did not depart Fort Devens until 5:15.  See

id. ¶¶ 79-84.  Finally, he alleges that Defendants manipulated the investigative process by

adulterating witness line-up identifications and by deliberately not exploring any facts that would

tend to indicate Maher's innocence.  See id. ¶¶ 71-74, 86.  As these facts are more than sufficient

to state the claims Maher has asserted, Maher responds below to the few legal points that can be

gleaned from Defendants' arguments regarding the substance of Maher's claims.

**A.    § 1983 Claims**

After Swierkiewicz v. Sorema, 534 U.S. 506 (2002) (no heightened pleading requirement

for civil rights actions) and Leatherman v. Tarrant County Narcotics Intelligence and

---

[8]  Maher is aware of no post-Heck Massachusetts appellate case addressing application of Heck principles to MCRA claims.  Maher respectfully submits that the Superior Court's post-Heck decision in Lombard gives effect to the purposes of the MCRA and brings the MCRA in line with § 1983 principles to which Massachusetts courts accord deference in interpreting the MCRA.  See Lombard, 1995 WL 1146874, at *3 ("[s]ection 1983 often defines the contours of the state Civil Rights Act") (citing Duarte v. Healy, 405 Mass. 32, 47 (1989); Bell v. Mazza, 394 Mass. 176, 181 (1985)).

Coordination Unit, 507 U.S. 163, 168 (1993) (no heightened pleading requirement for § 1983

municipal liability claims), a pleading asserting a § 1983 claim must set forth "minimal facts as

to who did what to whom, when, where, and why – although the why, when why means the

actor's state of mind, can be averred generally." Educadores Puertorriquenos en Action v.

Hernandez, 367 F.3d 61, 68 (1st Cir. 2004). Maher's § 1983 allegations satisfy this standard,

particularly when viewed through the lens drawn by the Wyniemko court, which rejected the

defendants' motion for summary judgment, on similar facts, as to virtually all of the § 1983

claims that Maher alleges here (inadequate investigation (see No. 03-CV-74749-DT, slip op. at

39-40, 43),[9] withholding of potentially exculpatory evidence (see id. at 43), unduly suggestive

identification techniques (see id. at 38-39), malicious prosecution (see id. at 43), conspiracy (see

id. at 46), supervisory liability (see id. at 48), and municipal liability under Monell (see id. at

49)).

Defendants do not seriously contend that a Brady violation – which Maher alleges here –

does not make out a § 1983 claim. Instead, they try to create a smokescreen, citing Kent K. and

Johnson for the mistaken suggestion that "[i]n Massachusetts, a police report is not admissible

evidence." Defs.' Opp. at 11. As recounted in Johnson, the SJC in Kent K. found that the

undisclosed police report in that case "'contain[ed] only a generic denial of the accusations

against him, which is inadmissible evidence . . . and hearsay evidence . . . that would not have

helped [Johnson] at his bench trial or at his trial by jury.'" Johnson, 424 F.3d at 88 (quoting

Kent K., 427 Mass. at 758-59). Nothing in either Johnson or Kent K. stands for the broad

---

[9]  The Wyniemko decision contradicts Defendants' contention that a § 1983 claim cannot be based on a deliberate
failure to investigate: here, just as in Wyniemko, "the fact that the defendants did not follow up on any of those tips,
identifications or inconsistencies could be found by a fact finder to be things that suggests the Defendants were
focused solely on a conviction of Plaintiff, irrespective of whether he was the perpetrator." No. 03-CV-74749-DT,
slip op. at 43. Moreover, as a factual matter, the statement Maher alleges of Defendant Davis (that he was "going to
take Maher down" (see Complt. ¶ 70)) echoes the Wyniemko defendant's statement ("I haven't even started f***ing
with you yet. By the time I'm done, you're going to be called the million dollar man"), which the court indicated
was "relevant in evaluating his conduct and approach in seeking the arrest warrant against plaintiff." No. 03-CV-
74749-DT, slip op. at 40.

proposition that police reports are inherently inadmissible, particularly where, as here, they could be used for impeachment.

Defendants' statement that "[t]here was no withholding of any . . . evidence by Davis or Sheehan" (see Defs.' Opp. at 11) does not make it so. On a motion to dismiss, the allegations of the complaint must be taken as true. Maher's complaint clearly alleges withholding of evidence on the part of these Defendants. See Complt. ¶¶ 83, 105-07. Cf. Wyniemko, No. 03-CV-74749-DT, slip op. at 43 ("The Court finds that Plaintiff has adequately established on the record evidence upon which a finder of fact could determine that the Defendants' actions, at a minimum, deprived Plaintiff of material exculpatory evidence and, at worst, involved wholly inappropriate conduct that the prosecution heavily relied on at the preliminary examination and trial in securing a conviction of Plaintiff."). The very fact that Maher was wrongly identified and wrongly convicted for three separate crimes creates a sufficient inference that the wrongful convictions were the result of something more than an honest mistake. Certainly, on a motion to dismiss, the Court must give Maher the benefit of such an inference.

Defendants' argument that their conduct as alleged is protected by absolute immunity (see Defs.' Opp. at 11) misses the mark. It is not the Defendants' testimony that Maher alleges is the actionable conduct, but rather their manipulation of evidence and the investigative process. The fact that certain of the Defendants may have testified does not cloak their conduct prior to taking the witness stand with the protections of testimonial immunity. See Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26, 29 (1st Cir. 1995) (immunized nature of an act "does not spread backwards like an inkblot, immunizing everything it touches").[10]

---

[10]   Specifically, had Defendants not conformed their police report to the facts as they needed them to be – as opposed to the facts as they were – Maher's alibi for the attack on LV1 would have been virtually airtight, because it would have been impossible for him to have left Fort Devens at 5:15 and arrived at the scene of the crime (twenty miles away) five minutes later.

In Nieves v. McSweeney, 241 F.3d 46 (1st Cir. 2001) the First Circuit, "assume[d] without deciding that malicious prosecution can, under some circumstances, embody a violation of the Fourth Amendment and thus ground a cause of action under section 1983." Id. at 54. Here, Maher's allegations of Brady violations in the course of legal process against him provide the necessary foundation for his § 1983 malicious prosecution claim.

As to Maher's conspiracy claim, at the pleading stage a § 1983 conspiracy claim does not require facts showing the existence of an express agreement:

> Agreement between the conspirators – the glue of the conspiracy – can be inferred from all of the factual circumstances alleged. United States v. Tormos-Vega, 959 F.2d 1103, 1117 (1st Cir. 1992); Earle v. Benoit, 850 F.2d 836, 843 (1st Cir. 1988). Plaintiff need not show an express agreement in order to state a claim for conspiracy. Earle, 850 F.2d at 845; see also Limone v. Condon, 372 F.2d 39, 49 (1st Cir. 2004) (for Rule 12(b)(6) purposes, the facts alleged in the complaint need only "support a plausible inference that" the alleged co-conspirators acted in concert).

Charles, 365 F. Supp. 2d at 90. Judged by these standards, Maher's complaint alleges more than ample circumstantial detail to state a § 1983 conspiracy claim. A plaintiff rarely has more at the initial pleading stage, as the facts relating to conspiracy are uniquely in the government's possession.

Finally, Maher's allegations in support of his Monell claim are also sufficient to withstand a motion to dismiss. See Complt. ¶¶ 182-84. As required by Educadores, 367 F.3d at 68 ("there are no heightened pleading standards for civil rights cases"), these allegations satisfy Rule 8(a)'s standards to put defendants on notice on the claims asserted.[11]

---

[11] Defendants' reliance on Cuddy v. City of Boston, 765 F. Supp. 775 (D. Mass. 1991) is egregiously misplaced. Cuddy was decided before the Supreme Court made crystal clear in Leatherman (1993) that federal court may not impose a heightened pleading standard for Monell claims, as the First Circuit had done prior to Leatherman. See Abany v. Fridovich, 862 F. Supp. 615, 620 n.8 (D. Mass. 1994) (recognizing abrogation of Cuddy); McGrath v. MacDonald, 853 F. Supp. 1, 3 n.4 (D. Mass. 1994) (in denying City's motion to dismiss § 1983 claim for inadequate training of police officers, noting Leatherman's instruction that, instead of relying on motions to dismiss to dispose of unmeritorious municipal liability claims, 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims') (quoting Leatherman, 507 U.S. at 168-69); Britton v. Maloney, 901 F. Supp. 444 (D. Mass. 1995) (denying City's motion to dismiss § 1983 failure-to-train claim, and stating: "Plaintiffs have a burden to produce evidence to prove that the City was deliberately indifferent in its failure to properly train, but they need not do so to defeat a motion to dismiss.") (citations omitted).

**B.    Tort Claims**

Maher's allegations that the Defendants manipulated evidence in order to obtain the conviction of an innocent man plainly reflect the "illegitimate purpose" necessary to state a claim for abuse of process.  The same allegations also reflect the "extreme and outrageous" conduct required to state a claim for intentional infliction of emotional distress.  Cf. Limone v. United States, 271 F. Supp. 2d 345, 363 (D. Mass. 2003) ("There can be little doubt that the acts of law enforcement personnel who framed innocent men for murder give rise to a claim of intentional infliction of emotional distress under Massachusetts law.").

The City of Lowell's claim that it cannot be held liable for the intentional torts of its employees begs the crucial question of whether the conduct alleged of the individual Defendants falls within the scope of their employment, which, under Massachusetts law, is a question of fact. See Pinshaw v. Metropolitan Dist. Comm'n, 402 Mass. 687, 684 (1988).  The City's assertion that Maher's negligence claim against it fails for lack of presentment rests on the impermissible presumption that Maher's claims accrued at the time of his conviction.  As shown above, the question of accrual is a factual one that cannot be decided on the pleadings.

**C.    MCRA Claim**

Maher's allegations that Defendant Davis stated he was "going to take Maher down" (see Complt. ¶ 70) and that Defendants coerced witnesses to identify Maher by placing a chair in front of him – and only him – in a line-up that followed a failed impromptu identification attempt (see id. ¶¶ ) constitute allegations of "threats, intimidation or coercion" sufficient to state a claim. Further, as this Court has stated: "[c]oercion, though a necessary element of a Section 11I action, need not be explicit." Britton, 901 F. Supp. at 453.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion should be denied.

Respectfully submitted,

**DENNIS MAHER,**

By his attorney,


/s/ Robert N. Feldman
Robert N. Feldman (BBO# 630734)
BIRNBAUM & GODKIN, LLP
280 Summer Street
Boston, MA  02210-1108
Telephone:  (617) 307-6100
Fax:  (617) 307-6101

Dated:  August 18, 2006


## CERTIFICATE OF SERVICE

I, Robert N. Feldman, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on August 18, 2006.

/s/ Robert N. Feldman
Robert N. Feldman