UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DENNIS MAHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF AYER, THE AYER POLICE | ) | Civil Action No. 06-10514-RGS |
| DEPARTMENT, NANCY TAYLOR-HARRIS a/k/a | ) | |
| NANCY TAYLOR, in her individual capacity, and | ) | |
| JOHN and JANE DOES NOS. 1-15, in their individual | ) | |
| capacities, CITY OF LOWELL, THE LOWELL | ) | |
| POLICE DEPARTMENT, EDWARD F. DAVIS III, in | ) | |
| his individual capacity, GARRETT SHEEHAN, in his | ) | |
| individual capacity, MARK T. GRANT, in his individual | ) | |
| capacity, and JOHN AND JANE DOES NOS. 16-30. | ) | |
| | ) | |
| Defendants. | ) | |

**DENNIS MAHER'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO AYER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (_LEAVE GRANTED_)**

With leave, Maher respectfully submits this supplemental memorandum in opposition to the Ayer Defendants' Motion for Summary Judgment.

**I.    Summary Background**

At the heart of Maher's claims against the Ayer Defendants and central to the summary judgment record is the conduct of Defendant Nancy Taylor-Harris ("Taylor").  In particular, Maher claims that Taylor violated his constitutional rights through misconduct relating to two key trial witnesses, Marilyn Ann Goss ("Goss") and Richard Nichols ("Nichols").

**A.    The Kenneth Waters Case**

At a November 1, 2006 deposition in another civil rights action pending in this District (Betty Anne Waters v. Town of Ayer, et al., C.A. No. 04-10521-GAO), the deponent, Brenda Marsh ("Marsh"), testified to Defendant Taylor's improper conduct in connection with Marsh's

testimony in the criminal prosecution of Kenneth Waters.

At Waters' 1983 murder trial, Marsh had testified falsely that Waters confessed to her that he murdered Katharina Brow. Based in large part on this false testimony of a purported confession, Waters was wrongfully convicted and spent close to 20 years in prison. After DNA exonerated him, Marsh recanted her testimony explaining that she was threatened by the Ayer Police Department and pressured to testify falsely against Mr. Waters.

**B.    Marsh's Deposition Testimony Regarding Taylor's Misconduct**

At Marsh's November 1, 2006 deposition in the Waters litigation, Marsh revealed that in 1983 Taylor threatened and pressured her into providing false testimony against Waters. Specifically, Marsh testified that Officer Taylor told her that if she did not help the Ayer Police, they could have Marsh's children taken away. See Nov. 1, 2006 Deposition of Brenda ("Marsh Depo.") at 207:11-208:12.[1] Marsh took seriously these threats, which were made repeatedly during the course of her interactions with the Ayer Police. Id. at 210:19-22.

The most damning testimony Marsh was pressured to provide against Waters was that Waters had confessed to the murder in Marsh's presence. Marsh testified to this fact, but it was false. Id. at 206:11-22; 209:18-211:6; 216:1-21. Marsh further stated at her November 1, 2006 deposition that Officer Taylor suggested to Marsh other false and inculpatory testimony Marsh should give. Id. at 214:16-23. For example, Taylor suggested to Marsh that she state that Kenneth Waters came home on the morning of the Brow murder with a scratch on his face, and that he had in his possession a knife used to commit the murder. Id. at 215:9-216: 21; 216:23-217:10. Marsh explained how she came to testify to these facts:

---

[1] Relevant excerpts from Ms. Marsh deposition are attached hereto as Exhibit A, along with the referenced Deposition Exhibit No. 6.

Q:  *Miss Marsh, is it fair to say that the reason why you had indicated at some point
that Waters came home on the morning of the 21st with a scratch on his face is
because that's what Nancy Taylor had suggested you say?*

      A:  *Yeah. Yes.*

*   *   *

Q:  *Do you remember being encouraged to testify that the photograph of the
knife you were shown was Kenny's knife because that's what Nancy Taylor
wanted you to say?*

      A:  *Yes.*

Id. at 215:17 to 216:10.  Finally, Marsh confirmed at her recent deposition that she gave the false

testimony Officer Taylor had suggested because of the threats made against her:

Q:  *In fact, your testimony was the result of your desire to do what the Ayer Police
were asking of you?*

      A:  *Exactly.*

Q:  *If pressure was not applied to you as you described earlier today by Officer
Taylor and the Ayer Police Department, would you have testified the way you
testified at Mr. Waters' trial?*

      A:  *No.*

Q:  *At least a large part of your motivation for providing the testimony that you gave
was to make sure that you were able to continue to raise your son and daughter?*

      A:  *Correct.*

Id. at 217:22 to 218:16.

**II.  Marsh's Testimony Regarding Taylor's Misconduct Is Relevant to the
Issues in the Present Action and Is Admissible Under Fed. R. Evid. 404(b).**

Taylor's state of mind is a significant issue raised by the Ayer Defendants' motion for

summary judgment.  This is because, in the First Circuit, a police officer's conduct in a § 1983

claim based on alleged Brady violations is measured against the following standard:

> While Brady established a no-fault obligation on the part of *prosecutors* to
> turn over exculpatory evidence, civil liability on the part of a police officer
> under § 1983 does not attach absent **some evidence that the officer acted, at
> a minimum, with less than good faith**.

Reid v. Simmons, 163 F.Supp.2d 81, 89 (D.N.H. 2001) (italics in original, other emphasis

added), aff'd, 47 Fed.Appx. 5, No. 01-1557, 2002 WL 31182838 (1st Cir. Sept. 25, 2002).[2]

Here, the record developed in 30 days of limited discovery reveals evidence from which

reasonable jurors could conclude that Officer Taylor:  (a) arranged the dismissal of a serious

criminal charge against the government's main witness, Goss, in order to secure her continued

cooperation in the rape investigation; (b) was responsible for Richard Nichols, a second critical

witness, who gave patently false testimony at Maher's criminal trial (including false testimony

about something that he could have learned only from Officer Taylor or the Ayer Police

Department); and (c) engaged in suggestive identification tactics at the time Goss is said to have

identified Maher as her attacker.

This conduct gives rise to a reasonable inference that Officer Taylor deprived Dennis

Maher of his right to a fair trial in violation of Officer Taylor's well-established duties.  In

particular, the withholding of exculpatory evidence in violation of Maher's Brady rights, and the

alleged fabrication of inculpatory trial testimony, forms more than enough evidence for Maher to

prove liability under the First Circuit's "less than good faith" or "deliberate indifference"

standard of liability for a police officer's violation of an individual's fair trial rights.

The Marsh testimony is material to the Court's summary judgment analysis because the

Ayer Defendants argue that Officer Taylor did not act with the requisite state of mind necessary

to support the § 1983 claims asserted.  The Marsh testimony, however, greatly strengthens the

inference that Taylor acted with "less than good faith."  Testimony concerning her coercive

---

[2] The Reid case confirms that, in the First Circuit, even after the arrest warrant issues, and regardless of probable cause, police officers are not insulated or immune from § 1983 liability where they fail to disclose Brady information to the prosecutor.  See also Brady v. Dill, 187 F.3d 104, 114-15 (1st Cir. 1999) ("a police officer sometimes may be liable [under § 1983] if he fails to apprise the prosecutor or a judicial officer of known exculpatory information").  Maher has filed herewith a motion for leave to file a short memorandum of law setting forth in detail the law regarding a police officer's obligations and potential liability under § 1983 for failure to disclose Brady evidence to the prosecutor – regardless of any prior probable cause determination.

conduct in the <u>Waters</u> investigation is highly probative evidence of Taylor's state of mind, and

is therefore admissible.  <u>See</u> Fed. R. Evid. 404(b) (evidence of "intent, preparation, plan,

knowledge, identity, or absence of mistake or accident" admissible).  Taylor's misconduct in the

<u>Waters</u> case (which went to trial in 1983, less than a year before Maher's case) is relevant

because it makes it more likely that, just as in <u>Waters</u>, Taylor's nondisclosure to the prosecutor

of her manipulation of witnesses to implicate Maher was neither an accident nor a mistake.  <u>See,</u>

<u>e.g., U.S. v. Oppon</u>, 863 F.2d 141, 147-48 (1st Cir. 1988) (evidence of other acts tending to

show intent admissible under Fed. R. Evid. 404(b)).  <u>Cf. Gulf USA Corp. v. Federal Ins. Co.,</u>

259 F.3d 1049, 1056 (9th Cir. 2001) ("sworn deposition testimony may be used by or against a

party on summary judgment regardless of whether the testimony was taken in a separate

proceeding").

<b><u>CONCLUSION</u></b>

For the reasons stated herein, and the reasons set forth in Maher's initial Opposition

Memorandum, the Ayer Defendants' Motion for Summary Judgment should be denied.

Respectfully submitted,

**DENNIS MAHER,**

by his attorney,

/s/ Robert N. Feldman
Robert N. Feldman (BBO# 630734)
BIRNBAUM & GODKIN, LLP
280 Summer Street
Boston, MA  02210-1108
Telephone:  (617) 307-6100
Fax: (617) 307-6101

Dated:  November 10, 2006

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that a true and correct copy of the foregoing document was delivered to all counsel of record on November 10, 2006, by electronic service.

/s/ Robert N. Feldman

Robert N. Feldman
