UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS MAHER,<br><br>       Plaintiff,<br><br>v.<br><br>TOWN OF AYER, THE AYER POLICE DEPARTMENT, NANCY TAYLOR-HARRIS a/k/a NANCY TAYLOR, in her individual capacity, and JOHN and JANE DOES NOS. 1-15, in their individual capacities, CITY OF LOWELL, THE LOWELL POLICE DEPARTMENT, EDWARD F. DAVIS III, in his individual capacity, GARRETT SHEEHAN, in his individual capacity, MARK T. GRANT, in his individual capacity, and JOHN AND JANE DOES NOS. 16-30.<br><br>       Defendants. | Civil Action No. 06-10514-RGS<br><br>**LEAVE GRANTED ON<br>DECEMBER 1, 2006** |

**PLAINTIFF DENNIS MAHER'S POST-HEARING MEMORANDUM OF LAW
IN OPPOSITION TO AYER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

At the November 6, 2006 oral argument on the Ayer Defendants' Motion for Summary Judgment, the Court expressed concern as to whether the law permits a finding of liability under § 1983 for a police officer who intentionally, recklessly, or with deliberate indifference fails to disclose impeachment or exculpatory evidence in violation of a former criminal defendant's constitutional right to a fair trial under the principles enunciated in Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972). The short answer is that the law compels such a finding in this and all other Circuits.

The First Circuit recognizes a § 1983 claim against a police officer arising out of Brady violations, regardless of any prior probable cause determination.[1] See Brady v. Dill, 187 F.3d

---

[1] By definition, a § 1983 cause of action arising out of Brady exists independently and regardless of the existence of probable cause, because Brady speaks to a fair trial right that could never be implicated if there was not some finding of probable cause that allowed the criminal proceedings to continue to the trial stage.

104, 114-15 (1st Cir. 1999); Reid v. New Hampshire, 56 F.3d 332, 342 (1st Cir. 1995). Such a claim may be predicated on a police officer's act of withholding Brady material from the prosecutor. In Brady v. Dill, 187 F.3d 104 (1st Cir. 1999), the First Circuit expressly stated:

> One standard police function is to provide information to the prosecutor and the courts. Thus, a police officer sometimes may be liable if he fails to apprise the prosecutor or a judicial officer of known exculpatory information. In these cases, the constitutional wrong results from the officer's failure to deliver material information to competent authorities. . . . it is ordinarily sufficient for the police officer to bring the relevant information to the attention of the prosecutor or the proper judicial official in a timeous fashion.

Id. at 114-15 (citations omitted).[2] Reid was one decision in a more than decade-long litigation that involved three trips to the First Circuit and a jury trial on Reid's § 1983 claim against a police officer. The § 1983 claim was based on an alleged Brady violation arising from the officer's nondisclosure of two reports that could have been used as impeachment evidence in Reid's criminal trial. It is clear from the travel of the case that the First Circuit recognizes such a claim. See Reid v. Simmons, 163 F.Supp.2d 81, 89 (D.N.H. 2001) (emphasis in original), aff'd, 47 Fed.Appx. 5, No. 01-1557, 2002 WL 31182838 (1st Cir. Sept. 25, 2002) ("While Brady established a no-fault obligation on the part of *prosecutors* to turn over exculpatory evidence, civil liability on the part of a police officer under § 1983 does not attach absent some evidence that the officer acted, at a minimum, with less than good faith.") (emphasis in original); see also Charles v. City of Boston, 365 F. Supp.2d 82, 88 (D. Mass. 2005) ("[a]t the time of Charles' arrest and prosecution [in the early 1980s], there was no question that criminal investigators had a Brady obligation to disclose material exculpatory evidence to the prosecutor, who in turn was obliged to disclose it to the defense") (citations omitted).

---

[2] Judge Ponsor similarly has stated, in the habeas context, that "the police may not 'help' the prosecution by keeping exculpatory evidence to themselves," and that "[i]t is also clear that exculpatory evidence includes impeachment material about the criminal backgrounds of prosecution witnesses." Campiti v. Matesanz, 186 F. Supp.2d 29, 48 (D. Mass. 2002).

The First Circuit is by no means alone in recognizing that police officers have obligations arising from Brady which may expose them to § 1983 liability when those obligations deliberately go unfulfilled – i.e., when, as here, the police officer conceals Brady information from the prosecutor.[3] Indeed, every Circuit Court of Appeals has recognized the validity of such a claim.[4] Said differently, the rule the Ayer Defendants would have this Court adopt in the

---

[3] In Giglio, the Supreme Court ruled that impeachment evidence relating to the promise of a benefit to a key witness constitutes Brady material. See 450 U.S. at 154.

[4] See Walker v. City of New York, 974 F.2d 293, 299 (2d Cir. 1992) ("the police satisfy their obligations under Brady when they turn exculpatory evidence over to the prosecutors"); Yarris v. County of Delaware, 465 F.3d 129, 141 (3d Cir. 2006) ("police officers and other state actors may be liable under § 1983 for failing to disclose exculpatory information to the prosecutor") (citations omitted); Jean v. Collins, 221 F.3d 656, 663-677 (4th Cir. 2000) (en banc) (all twelve judges were in agreement that police officers who intentionally withhold exculpatory evidence from prosecutors may be subject to liability under § 1983); Geter v. Fortenberry, 849 F.2d 1550, 1559 (5th Cir. 1988) ("a police officer cannot avail himself of a qualified immunity defense if he procures false identification by unlawful means or deliberately conceals exculpatory evidence, for such activity violates clearly established constitutional principles"); Gregory v. City of Louisville, 444 F.3d 725, 744 (6th Cir. 2006) (affirming denial of qualified immunity for investigator in § 1983 claim based on investigator's withholding of forensic evidence); Newsome v. McCabe, 260 F.3d 824, 825 (7th Cir. 2001) ("police who deliberately withhold exculpatory evidence, and thus prevent the prosecutors from complying with the obligations articulated in Brady, violate the due process clause"); Wilson v. Lawrence County, 260 F.3d 946, 957 (8th Cir. 2001) ("Law enforcement officers, like prosecutors, have a responsibility to criminal defendants to conduct their investigations and prosecutions fairly as illustrated by the Brady line of cases requiring the state to disclose exculpatory evidence to the defense."); Atkins v. County of Riverside, 151 Fed.Appx. 501, No. 03-55844, 2005 WL 2219461, at *1-3 (9th Cir. Sept. 14, 2005) (reversing summary judgment for police officer on § 1983 Brady-based claim for withholding fact that officer fabricated evidence, and observing that the "allegations and evidence paint a picture of an investigator willing to compromise his professional obligations out of a desire to pin a crime on a particular defendant") (unpublished); Robinson v. Maruffi, 895 F.2d 649, 655 (10th Cir. 1990) ("We believe there was sufficient evidence for the jury to find that the defendants purposefully concealed and misrepresented material facts to the district attorney which may have influenced his decision to prosecute Robinson."); McMillian v. Johnson, 88 F.3d 1554, (11th Cir. 1996) (remanding for further proceedings the plaintiff's § 1983 claim that police officers suppressed exculpatory and impeachment evidence, because "pre-existing law in this circuit clearly established that withholding Brady material from the prosecutor, and thus preventing its disclosure to the defense, violates and accused's due process rights"). Accord Newsome v. McCabe, 256 F.3d 747, 752-53 (7th Cir. 2001) ("clearly established in 1979 and 1980 that police could not withhold from prosecutors exculpatory information about fingerprints and the conduct of a lineup"); Sutkiewicz v. Monroe County Sherriff, 110 F.3d 352, 358 (6th Cir. 1997) ("when an officer is aware of exculpatory facts and circumstances, he has a duty to disclose those facts and circumstances to the prosecutor"); Sanders v. English, 950 F.2d 1152, 1162 (5th Cir. 1992) ("Lt. McCoy's deliberate failure to disclose this undeniably credible and patently exculpatory evidence to the prosecuting attorney's office plainly exposes him to liability under § 1983."); DeLoach v. Bevers, 922 F.2d 618, 621 (10th Cir. 1990) (upholding jury verdict for plaintiff where evidence showed that police officer deliberately withheld exculpatory opinion of medical expert); Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1988) (upholding jury verdict against police officers in § 1983 case by former criminal defendant based on officers' failure to disclose "street files" to prosecutor).

See also Lowery v. County of Riley, No. 04-3101-JTM, 2006 WL 2663480, at *17 (D. Kan. Sept. 15, 2006) (§1983 liability exists where impeachment or exculpatory evidence is withheld from prosecutor); Mayes v. City of Hammond, 442 F. Supp.2d 587, 625-26, 631-32 (N.D. Ind. 2006) (denying police officer's motion for summary judgment because, "[w]hen a police officer prevents the prosecutor from complying with his duty to produce exculpatory or impeaching evidence, by failing to disclose such evidence to the prosecutor, then the officer violates

present action – that after probable cause has been determined, a police officer, as a matter of law, cannot be liable under § 1983 for failing to disclose to the prosecutor evidence of impeachment or exculpatory value – is not the law of this Circuit, or any other Circuit.

In sum, there is no doubt in this or any other Circuit whether, as a matter of law, Maher has a viable § 1983 claim for Taylor's failure to disclose impeachment or other Brady evidence. From the evidence adduced in thirty days of limited discovery, reasonable jurors could infer that Defendant Taylor intentionally, recklessly, or with deliberate indifference violated Maher's constitutional rights under Brady and Giglio by withholding from the prosecutor the fact that Taylor had: (1) provided the government's main witness, Marilyn Ann Goss, with relief from a serious criminal charge in exchange for her continued cooperation in the rape investigation; and (2) solicited and orchestrated Richard Nichols' patently false testimony at Maher's criminal trial (including false testimony about purported facts that must have come from Officer Taylor or the Ayer Police Department).

At this stage, the Court cannot rule as a matter of law that Taylor's conduct with respect to Goss and Nichols was benign. See PNH Corp. v. Hullquist Corp., 843 F.2d 586, 594 (1st Cir. 1988) ("Credibility determinations, the weighing of the evidence, *and the drawing of legitimate inferences from the facts* are jury functions, not those of a judge . . . The evidence of the non-movant is to be believed, *and all justifiable inference are to be drawn in his favor*.") (quoting Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2513 (1986)) (emphasis supplied by PNH Corp. court). And, "[i]nferences can, of course, properly be drawn from circumstantial evidence." Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 169 F.3d 43, 56 (1st Cir. 1999). Taylor's efforts in 2006 to continue to keep her arrangement with Goss secret – which suggest a consciousness of wrongdoing – further support the reasonable inference that her

---

his obligations under Brady and is liable to the criminal defendant for violating his rights under the Due Process Clause of the Fourteenth Amendment") (citing Newsome); Wyniemko v. Ostin, slip op. at 45 (E.D. Mich. March 3, 2005) (same); Carter v. Harrison, 612 F. Supp. 749, 758 (E.D.N.Y. 1985) (same).

4

underlying conduct in 1983 was intentional and in bad faith.[5]

For these reasons, and the reasons previously set forth by Maher, summary judgment is inappropriate on the present record.

                                              Respectfully submitted,

                                              **DENNIS MAHER,**

                                              by his attorney,

                                              /s/ Robert N. Feldman
                                              Robert N. Feldman (BBO# 630734)
                                              BIRNBAUM & GODKIN, LLP
                                              280 Summer Street
                                              Boston, MA  02210-1108
                                              Telephone:  (617) 307-6100
                                              Fax:  (617) 307-6101

Dated:  December 1, 2006

---

[5] The document that the Ayer Defendants filed by letter with the Court on November 9, 2006, only serves to strengthen the inference to be drawn from the Goss arrest and subsequent promise and accommodation granted by Taylor. The document (which was not produced in discovery by the Ayer Defendants) shows that the charge of assault and battery on an Ayer police officer was not dismissed until February 1984, <u>after</u> Goss had identified Maher as her alleged attacker (on January 4, 1984). This chronology of events – Taylor's December 1984 promise to dismiss the charges against Goss in exchange for her cooperation in the rape investigation, Goss' identification of Maher less than one month later in January, and the ultimate dismissal of the charges against Goss in February – supports the inference that Goss still had a fear of prosecution and, therefore, an incentive to provide Officer Taylor with the information Officer Taylor wanted (a positive identification of Maher), in January 1984.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was delivered to all counsel of record on December 1, 2006, by electronic service.

/s/ Robert N. Feldman
Robert N. Feldman