LEXSEE 151 FED APPX 504


Analysis
As of: Dec 02, 2008

**HERMAN ATKINS, Plaintiff - Appellant, v. COUNTY OF RIVERSIDE, a public entity; et al., Defendants - Appellees.**

No. 03-55844

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

*151 Fed. Appx. 501; 2005 U.S. App. LEXIS 19928*

February 9, 2005, Argued and Submitted, Pasadena, California
September 14, 2005, Filed

**NOTICE:** [**1] RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part, Motion denied by *Atkins v. County of Riverside*, 2007 U.S. Dist. LEXIS 95924 (C.D. Cal., Mar. 20, 2007)

**PRIOR HISTORY:** Appeal from the United States District Court for the Central District of California. D.C. No. CV-01-01574-PA. Percy Anderson, District Judge, Presiding.

**DISPOSITION:** REVERSED in part; AFFIRMED in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sought review of a decision of the United States District Court for the Central District of California, which granted summary judgment to defendants, a county, a county deputy sheriff, and a California Department of Justice serologist. Plaintiff had alleged under *42 U.S.C.S. § 1983* that his constitutional rights were violated when the criminal investigation conducted by defendants resulted in plaintiff's wrongful conviction.

**OVERVIEW:** Plaintiff served eight years in prison before he was exonerated on the basis of DNA evidence. Plaintiff alleged that his due process rights were violated by defendants based upon their conduct in the criminal investigation. The district court granted summary judgment to defendants on all issues. The court held that it was error for the district court to dismiss plaintiff's claim against the deputy that Brady materials were improperly withheld. Plaintiff had provided sufficient evidence to support a claim based on the fact that the deputy did not disclose the creation of false evidence in a police report, and such a disclosure could have been used for impeachment purposes at trial. The Brady claims against the serologist were not actionable because the serologist's report properly put plaintiff on notice of the serology test results, and the serologist was not required to do more. Plaintiff's claim against the deputy for fabricating evidence should have survived summary judgment, because plaintiff had sufficiently alleged that the investigative techniques were coercive or abusive. Claims against the county were not actionable because there was no evidence of deficient training.

**OUTCOME:** The court reversed the district court's summary judgment in favor of the deputy on the allegations of a Brady violation and fabrication of evidence. The court affirmed the summary judgment on all the other claims, including claims against the serologist and the county.

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Discovery & Inspection > Brady Materials > Brady Claims*

[HN1] The prosecution's failure to disclose material evidence favorable to the accused can violate the accused's due process right to a fair trial. The obligation under Brady is the obligation of the government, not merely the obligation of the prosecutor. A successful Brady claim requires demonstrating that evidence (1) favorable to the accused, either because it is exculpatory, or it is impeaching, (2) was suppressed by the state (either wilfully or not), and (3) is material, by way of a reasonable probability that disclosure would have produced a different result at trial.

*Criminal Law & Procedure > Discovery & Inspection > Brady Materials > General Overview*
*Criminal Law & Procedure > Discovery & Inspection > Discovery Misconduct > General Overview*
*Evidence > Hearsay > Credibility of Declarants > Impeachment Evidence*
[HN2] Evidence that a chief investigator fabricated evidence while attempting to build a criminal case against a defendant undermines the credibility of that investigator as well as the evidence compiled in that investigation. This evidence could have been used to show that the witness was willing to lie about the defendant and even to accuse him falsely if doing so would result in even a minimal benefit to him.

*Criminal Law & Procedure > Discovery & Inspection > Brady Materials > Brady Claims*
*Criminal Law & Procedure > Discovery & Inspection > Discovery Misconduct > General Overview*
*Criminal Law & Procedure > Pretrial Motions & Procedures > Suppression of Evidence*
[HN3] The United States Court of Appeals for the Ninth Circuit has stated that a Brady violation cannot in itself support a deliberate fabrication of evidence claim. But it does not follow that a fabrication of evidence claim cannot support a Brady claim. To hold to the contrary would be tantamount to carving an exception to the Brady fair trial obligation for the most egregious of misconduct (deliberate fabrication). The fact police fabricated inculpatory evidence, if true, can have both exculpatory and impeachment value. The state has the obligation to not suppress such information.

*Criminal Law & Procedure > Discovery & Inspection > Brady Materials > General Overview*
*Criminal Law & Procedure > Discovery & Inspection > Discovery by Defendant > Tangible Objects > Scope*
[HN4] Brady does not require the prosecution to spell out why disclosed information is helpful to the defense.

*Civil Procedure > Summary Judgment > Evidence*
*Civil Rights Law > Section 1983 Actions > Law Enforcement Officials > General Overview*
*Civil Rights Law > Section 1983 Actions > Scope*
[HN5] There is a "clearly established" due process right not to be subjected to criminal charges on the basis of deliberately fabricated false evidence by the government. A plaintiff is required to show "at a minimum" either that the officers (1) continued the investigation although they knew or should have known of the suspect's innocence, or (2) used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.

*Civil Rights Law > Section 1983 Actions > Law Enforcement Officials > General Overview*
*Criminal Law & Procedure > Discovery & Inspection > Discovery Misconduct > General Overview*
[HN6] If any concept is fundamental to the American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals.

*Civil Rights Law > Section 1983 Actions > Scope*
*Criminal Law & Procedure > Trials > Defendant's Rights > Right to Due Process*
*Evidence > Procedural Considerations > Exclusion & Preservation by Prosecutor*
[HN7] A due process violation based on a failure to preserve potentially exculpatory evidence requires a showing of bad faith on the part of the official. Even if the evidence is essential to and determinative of the outcome of the case, no due process violation occurs absent a showing of bad faith. The potential exculpatory nature of evidence must be measured at the time the evidence was allegedly destroyed if Youngblood's "bad faith" requirement is to have any meaning at all. The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.

*Civil Rights Law > Section 1983 Actions > Law Enforcement Officials > General Overview*
*Civil Rights Law > Section 1983 Actions > Scope*
*Criminal Law & Procedure > Discovery & Inspection > Brady Materials > General Overview*
[HN8] The right not to be subjected to criminal charges on the basis of deliberately fabricated false evidence is clearly established.

*Civil Rights Law > Section 1983 Actions > Scope*
*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Evidence > Procedural Considerations > Exclusion & Preservation by Prosecutor*

[HN9] The duty under Brady extends to information within the possession or control of law enforcement personnel. It is well established that investigators who withhold exculpatory evidence from defendants violate the defendant's constitutional due process right. In addition, it seems sufficiently obvious that "common sense" would instruct a police officer to not withhold exculpatory evidence. A right can be clearly established on the basis of common sense.

**COUNSEL:** For HERMAN ATKINS, Plaintiff - Appellant: Johnnie L. Cochran, Jr., Esq., JOHNNIE L. COCHRAN LAW OFFICES, Los Angeles, CA.; Peter Neufeld, Esq., Deborah L. Cornwall, Esq., COCHRAN NEUFELD & SCHECK, LLP, New York, NY.

For COUNTY OF RIVERSIDE, a public entity, Defendant - Appellee: Christopher D. Lockwood, Esq., AIRAS LOCKWOOD & GRAY, San Bernadino, CA.

For JAMES T. HALL, an individual, Defendant - Appellee: Paul C. Epstein, Esq., AGCA - OFFICE OF THE CALIFORNIA ATTORNEY GENERAL (LA), Los Angeles, CA.

**JUDGES:** Before: PREGERSON, CANBY, and BEEZER, Circuit Judges.

**OPINION**

[*503] MEMORANDUM*

> * This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by *Ninth Circuit Rule 36-3*.

In this *42 U.S.C. § 1983* action, Herman Atkins appeals the district court's summary judgment in favor of defendants Riverside County, Riverside County Deputy Sheriff Danny Miller, and California Department of Justice [**2] Serologist James Hall. We affirm summary judgment in favor of Hall and the County of Riverside on all claims. We also affirm summary judgment in favor of Miller with respect to Atkins' claim of using unduly suggestive identification techniques. But we reverse on the fabrication of evidence and *Brady* claims against Miller.

**I**

The parties are aware of the factual and procedural history of this case. In a nutshell, Atkins served over eight years in prison for sexual assault and robbery before being exonerated on the basis of DNA evidence. BB at 2; ER 991 He subsequently brought this *§ 1983* action, alleging violations of his Due Process rights stemming from the investigation that led to his conviction. The district court granted summary judgment in favor of all defendants, and Atkins appeals. We address his allegations in turn.

**A. The** [**3] *Brady* **claims**

[HN1] The prosecution's failure to disclose material evidence favorable to the accused can violate the accused's due process right to a fair trial. *Brady v. Maryland, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963)*; see *Kyles v. Whitley, 514 U.S. 419, 433-34, 131 L. Ed. 2d 490, 115 S. Ct. 1555 (1995)* (discussing precedent). "The obligation under *Brady* . . . is the obligation of the government, not merely the obligation of the prosecutor." *United States v. Blanco,* [*504] *392 F.3d 382, 393 (9th Cir. 2004)*. A successful *Brady* claim requires demonstrating that evidence (1) "favorable to the accused, either because it is exculpatory, or it is impeaching," (2) was suppressed by the state (either wilfully or not), and (3) is "material," by way of a "reasonable probability" that disclosure would have produced a different result at trial. *Strickler v. Greene, 527 U.S. 263, 281-82, 144 L. Ed. 2d 286, 119 S. Ct. 1936 (1999)*; see *Blanco, 392 F.3d at 388*.

The survival at summary judgment of Atkins' *Brady* claim against Miller turns on the allegation that Miller suppressed the fact that he fabricated a police report as part of his investigation. Specifically, Atkins alleges that Miller represented [**4] that Eric Ingram told him he knew Atkins and knew that Atkins frequented the general vicinity of the crimes. BB at 6. Ingram now denies having such a discussion, or even knowing who Atkins was. ER 987.

Because this appeal is in response to a grant of summary judgment, we view the evidence in the light most favorable to the nonmoving party, Atkins. *Olsen v. Id. St. Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004)*. Given this procedural posture, we hold that Atkins has provided sufficient evidence to support a *Brady* claim based on the failure to disclose that Miller created false evidence. Such evidence is favorable to the accused for impeachment purposes. *See, e.g., Benn v. Lambert, 283 F.3d 1040, 1056 (9th Cir. 2002)*. It was not disclosed to the defendant. *See id.* There is a reasonable probability that disclosure of such information would have changed the outcome of the case. *Id.*

Miller's attempts to cabin this claim outside the *Brady* framework miss the mark. [1] Whether the

prosecution actually introduced Ingram's statement at trial is irrelevant because Atkins' claim is based on the suppression of *impeachment* evidence. [**5] *See, e.g., Blanco, 392 F.3d at 388.* [HN2] Evidence that a chief investigator fabricated evidence while attempting to build the case against the defendant undermines the credibility of that investigator as well as the evidence compiled in that investigation. *Cf. Benn, 283 F.3d at 1056* ("This evidence could have been used to show that [the witness] was willing to lie about [the defendant] and even to accuse him falsely . . . if doing so would result in even a minimal benefit to him."). [2]

   1   In granting summary judgment to Miller on this claim, the district court concluded that Atkins had not met his burden of establishing that exculpatory evidence existed that was not provided to the defense. The court stated that "Atkins presents no evidence that prosecutors or police knew of a false statement before the Atkins trial." ER 1000 We find this statement hard to reconcile, however, with the district court's subsequent recognition that Atkins *did* present evidence to support the assertion that "Miller lied in his police report." ER 1000 We construe the court's point to be that demonstrating an issue of fact regarding a police officer's veracity cannot create "significant probative evidence" of a *Brady* violation, a view that we do not share in this case. *See, e.g., Strickler, 527 U.S. at 280-81* (explaining that the *Brady* obligation extends to "evidence known only to police investigators and not to the prosecutor" (internal quotation marks omitted)).

[**6]
   2   We also reject Miller's argument that mere access on the part of the defendant to the allegedly fabricated police report absolved the government of any *Brady* duty of disclosure. Miller 43 A "defendant furnished with . . . inculpatory evidence by the state is not required to assume that the state has concealed material information and has thereby obligated him to ascertain the *Brady* material on his own." *Benn, 283 F.3d at 1062.* The Supreme Court recently made a similar point in *Banks v. Dretke, 540 U.S. 668, 157 L. Ed. 2d 1166, 124 S. Ct. 1256 (2004)* (internal citations omitted), stating that a rule "declaring 'prosecutor may hide, defendant must seek' is not tenable in a system constitutionally bound to accord defendants due process. Ordinarily, we presume that public officials have properly discharged their official duties." Likewise here, Atkins challenges the veracity of affirmative statements made by Miller about his investigation. Atkins was "surely entitled to rely" on these statements. *See Gantt v. Roe, 389 F.3d 908, 913 (9th Cir. 2004).*

[*505] It is along this [**7] same line of reasoning that we are persuaded such evidence was material. Atkins' allegations and evidence paint a picture of an investigator willing to compromise his professional obligations out of a desire to pin a crime on a particular defendant. Disclosing the alleged fabrication to the defense--and the jury--would have cast a shadow across the entire police investigation. The prosecution's case essentially boiled down to the contested witness and victim identifications, shoes that the victim could *not* identify as belonging to the victim, [3] and a questionable serologist report. Miller played a role in gathering all of this evidence. The jury's willingness to believe that a police investigation proceeded "by the books" would understandably be met with more skepticism had the jury known that a chief investigator had seen fit to fabricate some evidence. It would have also put Atkins' assertion of tainted witness identifications into a different light. A jury would be more suspicious of an officer's assertion of "fairness" in the manner in which he secured an identification knowing that same officer had falsified other information against Atkins. AER 93 *Cf. Kyles, 514 U.S. at 437* [**8] (requiring consideration of the "likely net effect" of all non-disclosed evidence).

   3   The failure to disclose that the victim allegedly could not identify the shoes and ring Miller seized from Atkins does not provide a sufficient basis for a *Brady* claim on its own. Its only relevance is in assessing the materiality of Atkin's *Brady* claim as a whole. *Blanco, 392 F.3d at 387* ("For purposes of *Brady*, materiality is measured 'in terms of suppressed evidence considered collectively, not item by item.'" (quoting *Kyles, 514 U.S. at 436*)). Atkins has presented sufficient evidence for a jury to make the reasonable inference, based on Miller's failure to document any affirmative identification of these items and the department's standard operating policy at that time, that the victim did not identify these items. Although such a fact alone may be insignificant, the prosecution nevertheless presented these shoes to the jury. This fact, when compiled with the alleged fabrication of other evidence by Miller, contributes to undermining the reliability of Miller and the prosecution's case. *See Bracy, 67 F.3d at 1429.*

[**9] We hold that Atkins has presented sufficient evidence to survive summary judgment on his *Brady* claim. Disclosing that an investigator fabricated evidence

during the investigation would have instantly upset the credibility of the rest of the police investigation. Evidence that the government suppressed such a fact provides a sufficient basis for a *Brady* claim. [4] *See Manning v. Miller, 355 F.3d 1028, 1032-34 (7th Cir. 2004)* (holding that a plaintiff's allegation that "investigators created false evidence," including fabricating [*506] statements by a witness in a police report, constituted a "true *Brady* claim").

> 4 In *Devereaux v. Abbey, 263 F.3d 1070, 1079 (9th Cir. 2001)* (en banc), [HN3] we stated that a *Brady* violation "cannot in itself support a deliberate-fabrication-of-evidence claim." But it does not follow that a fabrication of evidence claim cannot support a *Brady* claim. To hold to the contrary would be tantamount to carving an exception to the *Brady* fair trial obligation for the most egregious of misconduct (deliberate fabrication). The fact police fabricated inculpatory evidence, if true, can have both exculpatory and impeachment value. The state has the obligation to not suppress such information.
>
> A quite different case arises when a defendant *knows* of the alleged false information. We agree with out-of-circuit precedent that holds in such situations a *Brady* claim is not cognizable because there is no suppression of evidence. *See Gauger v. Hendle, 349 F.3d 354, 360 (7th Cir. 2003)* (No *Brady* duty of disclosure where defendant "knew what he had said in the interrogation"); *see also Manning, 355 F.3d at 1032* (explaining *Gauger*).

[**10] In contrast, the *Brady* claims against Hall are deficient. BB 29 Although Hall's report lacked specificity and was arguably misleading, it properly put Atkins on notice of the serology testing results.[HN4] *Brady* does not require the prosecution to spell out *why* disclosed information is helpful to the defense. *See United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)* (concluding that disclosed documents "provided all the information necessary for the defendants to discover the alleged *Brady* material on their own"). Similarly, Hall's failure to turn over the bench notes was not a *Brady* violation because there was no showing that they included exculpatory information not in the final report.

Atkins has provided sufficient evidence to survive summary judgment on his claims of a *Brady* violation against Miller. Atkins has not made a sufficient claim against Hall.

**B. Fabricating evidence**

Atkins has provided sufficient evidence to avoid summary judgment in favor of Miller on the fabrication of evidence claim. [HN5] There is a "clearly established" due process right not to be subjected to criminal charges on the basis of deliberately fabricated [**11] false evidence by the government. *Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001)* (en banc). *Devereaux* requires the plaintiff to show "at a minimum" either that the officers (1) continued the investigation although they knew or should have known of the suspect's (now plaintiff's) innocence, or (2) "used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Id. at 1076.*

Viewed in the light most favorable to Atkins, the evidence supports a *Devereaux* claim under the second proposition. *See Limone v. Condon, 372 F.3d 39, 44-45 (1st Cir. 2004)* (citing *Devereaux*) [HN6] ("If any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals."). Including a fabricated conversation in a police report would appear, by definition, to qualify as a technique that a police officer should know yields false information. *See Devereaux, 263 F.3d at 1075.* Although Ingram's statement was not introduced at [**12] trial, a factual question remains whether Atkins was subjected to criminal charges "on the basis of" deliberately fabricated evidence. *See id.*

Turning to Hall's alleged false reporting of lab results, however, we affirm the district court's grant of summary judgment. Although Atkins makes out a colorable claim that Hall was not as forthcoming in explaining information as he should have been, there is not sufficient evidence that he intentionally fabricated evidence. *See id. at 1075.*

**C. Using unduly suggestive identification procedures**

Atkins next challenges summary judgment in favor of Miller on the use of improper identification techniques. BB 43 Atkins argued the admissibility of these identifications before the state courts and lost. AER 30 We agree with the state courts that, under a totality of circumstances test, the evidence appeared reliable at trial. Although ideally a photo array would have included a different picture of the suspect than the one portrayed on a wanted poster and repeatedly shown to the victim and witness, the victim and witness independently identified Atkins on [*507] multiple occasions. The identification procedures were not [**13] "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States, 390 U.S. 377, 383-84, 19 L. Ed. 2d 1247, 88 S.*

*Ct. 967 (1968); see United States v. Bagley, 772 F.2d 482, 492 (9th Cir. 1985).*

### D. Failing to investigate and/or preserve evidence

Atkins next asserts a due process violation based on Hall's failure to investigate or preserve evidence of the alleged pubic hairs found at the crime scene. BB 37 [HN7] A due process violation based on the failure to preserve *potentially* exculpatory evidence requires a showing of bad faith on the part of the official. *Arizona v. Youngblood, 488 U.S. 51, 57, 102 L. Ed. 2d 281, 109 S. Ct. 333 (1988); see Mitchell v. Goldsmith, 878 F.2d 319, 321 (9th Cir. 1989).* Even if the evidence is "essential to and determinative of the outcome of the case," no due process violation occurs absent a showing of bad faith. *Illinois v. Fisher, 540 U.S. 544, 547-549, 157 L. Ed. 2d 1060, 124 S. Ct. 1200 (2004).* Contrary to Atkins' assertion, the potential exculpatory nature of evidence must be measured at the time the evidence was allegedly destroyed if *Youngblood*'s "bad faith" requirement is to have [**14] any meaning at all. *Youngblood, 488 U.S. at 56* n\* ("The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.").

Atkins fails to provide evidence of bad faith on Hall's part. Even assuming pubic hairs were included in the evidence turned over to the DOJ for testing, Atkins still has not shown that Hall intentionally misplaced this evidence.

### II

Miller is not entitled to qualified immunity as to the fabrication of evidence and *Brady* claims. [5] *See, e.g., Devereaux, 263 F.3d at 1074* (explaining the "two-step qualified immunity inquiry"). *Devereaux* holds that [HN8] the right not to be subjected to criminal charges on the basis of deliberately fabricated false evidence is "clearly established." *Id. at 1074-75.* And as for the *Brady* claim, a police officer in 1988 should have been aware of his obligation to not withhold exculpatory evidence. *See, e.g., Blanco, 392 F.3d at 388* (citing precedent holding [HN9] *Brady* duty extends to "information within the [**15] possession or control of law enforcement personnel"); *United States v. Butler, 567 F.2d 885, 891 (9th Cir. 1978); see also Manning,* *355 F.3d at 1034* (stating that it is "well established that investigators who withhold exculpatory evidence from defendants violate the defendant's constitutional due process right"). In addition, it seems sufficiently obvious that "common sense" would instruct a police officer to not withhold exculpatory evidence. *See Devereaux, 263 F.3d at 1075* ("[A] right can be clearly established on the basis of common sense." (internal citation and quotation marks omitted)).

> 5  Because Atkins has not sufficiently demonstrated a constitutional violation by Hall, we do not address qualified or absolute immunity on Hall's behalf. *See Saucier v. Katz, 533 U.S. 194, 201, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001).*

### III

Finally, Atkins challenges summary judgment in favor of Riverside County on the claim of failure to train or supervise. BB 50 Besides the [**16] conduct involving the allegedly fabricated police report, Atkins has not provided sufficient evidence to support [*508] that a county employee committed a constitutional violation, foreclosing a *Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978),* claim of county liability. *See Quintanilla v. City of Dewey, 84 F.3d 353, 355 (9th Cir. 1996).*

Even Miller's alleged fabrication of evidence and *Brady* violations do not create a basis for county liability. There is no indication that the County needed to train officers to not lie on a police report, or to suppress a lie once told. Atkins has not explained how a failure to train or supervise on *Brady* obligations was the "moving force" behind Miller's alleged fabrication and concealment. *See City of Canton v. Harris, 489 U.S. 378, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989); Gibson v. County of Washoe, 290 F.3d 1175, 1194 (9th Cir. 2002).*

### IV

We **reverse** the district court's summary judgment in favor of Miller on the allegations of a *Brady* violation and fabrication of evidence. We **affirm** summary judgment against Atkins as to all other claims.

**REVERSED in part; AFFIRMED in** [**17] **part.**

1338SS

********** Print Completed **********

Time of Request: Tuesday, December 02, 2008   11:33:31 EST

Print Number:    2822:128323556
Number of Lines: 358
Number of Pages:

Send To:  GOODWIN, 1338SS CUI
          GOODWIN PROCTER LLP- CUI
          53 STATE ST
          BOSTON, MA 02109-2803