Westlaw.

--- F.3d ----
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
**(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))**

Page 1

H
United States Court of Appeals, Ninth Circuit.
Raymond TORRES; Maria Elva Almador-Torres, Plaintiffs-Appellants,
v.
CITY OF LOS ANGELES; Los Angeles Police Department, Brad Roberts, LAPD Detective; Jennifer Hickman, LAPD Detective; Steve Park, LAPD Detective; F. Rains, LAPD Detective, Defendants-Appellees.
No. 06-55817.

Argued and Submitted Feb. 12, 2008.
Opinion Filed Aug. 26, 2008.
Opinion Withdrawn Nov. 13, 2008.
New Opinion Filed Nov. 13, 2008.

**Background:** Former prisoner, who was incarcerated at age 16 for 162 days before murder and attempted murder charges against him were dismissed, filed action, together with his mother, against city, police department, and four detectives, alleging violations of Fourth Amendment and state law. The United States District Court for the Central District of California, R. Gary Klausner, J., granted partial summary judgment to city and police department, denied plaintiffs' motions in limine, and granted defendants' motion for judgment as matter of law after all evidence was presented to jury. Plaintiffs appealed.

**Holdings:** The Court of Appeals, Betty B. Fletcher, Circuit Judge, held that:
(1) Fourth Amendment claim was barred against detective not present at arrest;
(2) whether detectives had probable cause for arrest was for jury;
(3) whether detectives were protected by qualified immunity was for jury;
(4) detective who was allegedly falsely told of suspect's identification was protected by qualified immunity; and
(5) gang specialist's expert testimony was inadmissible.

Affirmed in part, reversed in part, and remanded.

Opinion, 540 F.3d 1031, withdrawn and superseded.

West Headnotes

**[1] Federal Courts 170B ⇐776**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk776 k. Trial De Novo. Most Cited Cases
Court of Appeals reviews de novo the district court's order granting defendants' motion for judgment as a matter of law. Fed.Rules Civ.Proc.Rule 50(a), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ⇐2142.1**

170A Federal Civil Procedure
    170AXV Trial
        170AXV(F) Taking Case or Question from Jury
            170AXV(F)2 Questions for Jury
                170Ak2142 Weight and Sufficiency of Evidence
                    170Ak2142.1 k. In General. Most Cited Cases

**Federal Civil Procedure 170A ⇐2152**

170A Federal Civil Procedure
    170AXV Trial
        170AXV(F) Taking Case or Question from Jury
            170AXV(F)2 Questions for Jury
                170Ak2152 k. Conclusions or Inferences from Evidence. Most Cited Cases

**Federal Civil Procedure 170A ⇐2608.1**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(E) Notwithstanding Verdict
            170Ak2608 Evidence
                170Ak2608.1 k. In General. Most Cited

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:06-cv-10514-RGS   Document 173-7   Filed 12/03/08   Page 2 of 18

--- F.3d ----
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))

Page 2

Cases
Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion, in other words, if no reasonable juror could find in the non-moving party's favor. Fed.Rules Civ.Proc.Rule 50(a), 28 U.S.C.A.

[3] Federal Civil Procedure 170A €→2127

170A Federal Civil Procedure
　　170AXV Trial
　　　　170AXV(F) Taking Case or Question from Jury
　　　　　　170AXV(F)1 In General
　　　　　　　　170Ak2126 Determination
　　　　　　　　　　170Ak2127 k. Construction of Evidence. Most Cited Cases

**Federal Civil Procedure 170A €→2609**

170A Federal Civil Procedure
　　170AXVII Judgment
　　　　170AXVII(E) Notwithstanding Verdict
　　　　　　170Ak2608 Evidence
　　　　　　　　170Ak2609 k. Construction of Evidence. Most Cited Cases
On motion for judgment as a matter of law, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party. Fed.Rules Civ.Proc.Rule 50(a), 28 U.S.C.A.

[4] Federal Civil Procedure 170A €→2152

170A Federal Civil Procedure
　　170AXV Trial
　　　　170AXV(F) Taking Case or Question from Jury
　　　　　　170AXV(F)2 Questions for Jury
　　　　　　　　170Ak2152 k. Conclusions or Inferences from Evidence. Most Cited Cases
On motion for judgment as a matter of law, if conflicting inferences may be drawn from the facts, the case must go to the jury. Fed.Rules Civ.Proc.Rule 50(a), 28 U.S.C.A.

[5] Federal Courts 170B €→776

170B Federal Courts
　　170BVIII Courts of Appeals
　　　　170BVIII(K) Scope, Standards, and Extent
　　　　　　170BVIII(K)1 In General
　　　　　　　　170Bk776 k. Trial De Novo. Most Cited Cases
Court of Appeals reviews de novo the district court's finding of probable cause, as well as its grant of qualified immunity. U.S.C.A. Const.Amend. 4.

[6] Federal Courts 170B €→823

170B Federal Courts
　　170BVIII Courts of Appeals
　　　　170BVIII(K) Scope, Standards, and Extent
　　　　　　170BVIII(K)4 Discretion of Lower Court
　　　　　　　　170Bk823 k. Reception of Evidence. Most Cited Cases
Court of Appeals reviews for an abuse of discretion the district court's evidentiary rulings.

[7] Civil Rights 78 €→1358

78 Civil Rights
　　78III Federal Remedies in General
　　　　78k1353 Liability of Public Officials
　　　　　　78k1358 k. Criminal Law Enforcement; Prisons. Most Cited Cases
Detective who was not present when suspect was arrested, did not instruct other detectives to arrest suspect, and was not consulted by other detectives before arrest lacked "integral participation" in alleged Fourth Amendment violation, for purposes of suspect's § 1983 action challenging his warrantless arrest for murder and attempted murder charges that were later dismissed. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983; West's Ann.Cal.Penal Code §§ 187, 664.

[8] Civil Rights 78 €→1358

78 Civil Rights
　　78III Federal Remedies in General
　　　　78k1353 Liability of Public Officials
　　　　　　78k1358 k. Criminal Law Enforcement; Prisons. Most Cited Cases
Absent evidence that detective in charge of investigating gang-related shooting acted as a supervisor, she could not be held liable under § 1983 for any Fourth Amendment violation resulting from suspect's warrantless arrest by other officers on murder charges that were later dismissed. U.S.C.A.

Case 1:06-cv-10514-RGS Document 173-7 Filed 12/03/08 Page 3 of 18

--- F.3d ----
Page 3
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))

Const.Amend. 4; 42 U.S.C.A. § 1983; West's Ann.Cal.Penal Code §§ 187, 664.

[9] Arrest 35 €═══63.4(2)

35 Arrest
    35II On Criminal Charges
        35k63 Officers and Assistants, Arrest Without Warrant
            35k63.4 Probable or Reasonable Cause
                35k63.4(2) k. What Constitutes Such Cause in General. Most Cited Cases
"Probable cause" to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested. U.S.C.A. Const.Amend. 4.

[10] Arrest 35 €═══63.4(3)

35 Arrest
    35II On Criminal Charges
        35k63 Officers and Assistants, Arrest Without Warrant
            35k63.4 Probable or Reasonable Cause
                35k63.4(3) k. Suspicion or Rumor. Most Cited Cases
While conclusive evidence of guilt is not necessary under standard to establish probable cause for an arrest, mere suspicion, common rumor, or even strong reason to suspect are not enough. U.S.C.A. Const.Amend. 4.

[11] Arrest 35 €═══63.4(11)

35 Arrest
    35II On Criminal Charges
        35k63 Officers and Assistants, Arrest Without Warrant
            35k63.4 Probable or Reasonable Cause
                35k63.4(7) Information from Others
                    35k63.4(11) k. Other Officers or Official Information. Most Cited Cases
Under the "collective knowledge doctrine," in determining whether probable cause exists for arrest, the collective knowledge of all the officers involved in the criminal investigation is analyzed. U.S.C.A. Const.Amend. 4.

[12] Arrest 35 €═══63.4(1)

35 Arrest
    35II On Criminal Charges
        35k63 Officers and Assistants, Arrest Without Warrant
            35k63.4 Probable or Reasonable Cause
                35k63.4(1) k. Grounds for Warrantless Arrest in General. Most Cited Cases
While probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest, an arrest is still unlawful unless probable cause existed under a specific criminal statute. U.S.C.A. Const.Amend. 4.

[13] Homicide 203 €═══530

203 Homicide
    203II Murder
        203k529 Malice
            203k530 k. In General. Most Cited Cases

Homicide 203 €═══532

203 Homicide
    203II Murder
        203k529 Malice
            203k532 k. Implied. Most Cited Cases

Homicide 203 €═══558

203 Homicide
    203II Murder
        203k556 Attempt
            203k558 k. Intent or Mens Rea. Most Cited Cases
Under California law, murder and attempted murder both require an unlawful killing with malice aforethought, although malice is implied when a killing results from an intentional act, the natural consequences of which are dangerous to human life, and the act is deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. West's Ann.Cal.Penal Code §§ 187, 664.

[14] Arrest 35 €═══63.4(1)

35 Arrest
    35II On Criminal Charges

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:06-cv-10514-RGS   Document 173-7   Filed 12/03/08   Page 4 of 18

--- F.3d ----                                                                                  Page 4
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
**(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))**

35k63 Officers and Assistants, Arrest Without Warrant
   35k63.4 Probable or Reasonable Cause
    35k63.4(1) k. Grounds for Warrantless Arrest in General. Most Cited Cases
An arrest is lawful under the Fourth Amendment only if it is accompanied by probable cause to believe that the arrestee has committed, or is committing, an offense. U.S.C.A. Const.Amend. 4.

**[15] Criminal Law 110 €—59(3)**

110 Criminal Law
 110VII Parties to Offenses
  110k59 Principals, Aiders, Abettors, and Accomplices in General
   110k59(3) k. Presence. Most Cited Cases
Mere presence in a vehicle in which a crime is being committed is not an offense.

**[16] Homicide 203 €—592**

203 Homicide
 203III Homicide in Commission of or with Intent to Commit Other Unlawful Act
  203III(B) Murder
   203k592 k. Death Caused by Third Person in General. Most Cited Cases
California's "provocative act murder theory" can be applied in situations in which criminal defendants neither kill nor intend to kill, but cause a third party to kill in response to their life-threatening provocative acts. West's Ann.Cal.Penal Code §§ 187, 664.

**[17] Homicide 203 €—592**

203 Homicide
 203III Homicide in Commission of or with Intent to Commit Other Unlawful Act
  203III(B) Murder
   203k592 k. Death Caused by Third Person in General. Most Cited Cases
Under California law, to satisfy the actus reus element of provocative act murder, the defendant or one of his confederates must commit an act which provokes a third party into firing the fatal shot. West's Ann.Cal.Penal Code §§ 187, 664.

**[18] Homicide 203 €—592**

203 Homicide
 203III Homicide in Commission of or with Intent to Commit Other Unlawful Act
  203III(B) Murder
   203k592 k. Death Caused by Third Person in General. Most Cited Cases
Under California law, no criminal liability attaches to an initial remote actor for an unlawful killing that results from an independent intervening cause, that is, a superseding cause. West's Ann.Cal.Penal Code §§ 187, 664.

**[19] Civil Rights 78 €—1429**

78 Civil Rights
 78III Federal Remedies in General
  78k1425 Questions of Law or Fact
   78k1429 k. Criminal Law Enforcement; Prisons. Most Cited Cases
Based on information detectives had at time of suspect's arrest, issue of whether detectives had probable cause to believe that suspect was passenger in car from which shots were fired, and had acted in concert with shooter with conscious disregard for human life, was for jury, in suspect's § 1983 action challenging his warrantless arrest for murder and attempted murder charges that were later dismissed; general description of passenger, impermissibly suggestive photo identification of suspect, and lack of evidence as to passenger's culpability precluded finding of probable cause as a matter of law. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983; West's Ann.Cal.Penal Code §§ 187, 664.

**[20] Arrest 35 €—63.4(12)**

35 Arrest
 35II On Criminal Charges
  35k63 Officers and Assistants, Arrest Without Warrant
   35k63.4 Probable or Reasonable Cause
    35k63.4(7) Information from Others
     35k63.4(12) k. Identification or Description of Offender or Vehicle. Most Cited Cases
Mere resemblance to a general description is not enough to establish probable cause for an arrest. U.S.C.A. Const.Amend. 4.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:06-cv-10514-RGS   Document 173-7   Filed 12/03/08   Page 5 of 18

--- F.3d ----                                                                                    Page 5
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))

[21] **Arrest 35** 🗝63.4(12)

35 Arrest
   35II On Criminal Charges
      35k63 Officers and Assistants, Arrest Without Warrant
         35k63.4 Probable or Reasonable Cause
            35k63.4(7) Information from Others
               35k63.4(12) k. Identification or Description of Offender or Vehicle. Most Cited Cases

A suggestive photo array may still serve as a basis for probable cause for arrest if sufficient indicia of reliability are present including: (1) the opportunity to view the criminal at the time of the crime, (2) the degree of attention paid to the criminal, (3) the accuracy of the prior descriptions of the criminal, (4) the level of certainty demonstrated at the time of the confrontation, and (5) the length of time between the crime and the confrontation. U.S.C.A. Const.Amend. 4.

[22] **Civil Rights 78** 🗝1376(6)

78 Civil Rights
   78III Federal Remedies in General
      78k1372 Privilege or Immunity; Good Faith and Probable Cause
         78k1376 Government Agencies and Officers
            78k1376(6) k. Sheriffs, Police, and Other Peace Officers. Most Cited Cases

When a police officer asserts qualified immunity, a two-part analysis under *Saucier* is applied: (1) whether the facts, when taken in the light most favorable to plaintiffs, show that defendants' conduct violated a constitutional right, and (2) whether the constitutional right at issue is clearly established.

[23] **Civil Rights 78** 🗝1432

78 Civil Rights
   78III Federal Remedies in General
      78k1425 Questions of Law or Fact
         78k1432 k. Defenses; Immunity and Good Faith. Most Cited Cases

While at the summary judgment stage the qualified immunity issue is necessarily decided by the federal court if it turns on issues of law, the submission of the qualified immunity issue to the jury is permissible where genuine issues of material fact exist.

[24] **Officers and Public Employees 283** 🗝119

283 Officers and Public Employees
   283III Rights, Powers, Duties, and Liabilities
      283k119 k. Actions by or Against Officers and Employees. Most Cited Cases

When a case proceeds to trial, qualified immunity can no longer rightly be called an immunity from suit, since the suit has already proceeded to its conclusion; rather, it is now effectively a defense.

[25] **Civil Rights 78** 🗝1376(2)

78 Civil Rights
   78III Federal Remedies in General
      78k1372 Privilege or Immunity; Good Faith and Probable Cause
         78k1376 Government Agencies and Officers
            78k1376(2) k. Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General. Most Cited Cases

In determining whether an alleged constitutional right in a civil rights action was clearly established, as required to overcome qualified immunity defense, the alleged constitutional right is not considered as a general proposition; rather, the relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

[26] **Civil Rights 78** 🗝1376(6)

78 Civil Rights
   78III Federal Remedies in General
      78k1372 Privilege or Immunity; Good Faith and Probable Cause
         78k1376 Government Agencies and Officers
            78k1376(6) k. Sheriffs, Police, and Other Peace Officers. Most Cited Cases

Qualified immunity in a civil rights case alleging arrest without probable cause is an objective inquiry, so that whether the officers subjectively believed that they had probable cause to arrest suspect is irrelevant. U.S.C.A. Const.Amend. 4.

[27] **Civil Rights 78** 🗝1432

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

78 Civil Rights
   78III Federal Remedies in General
      78k1425 Questions of Law or Fact
         78k1432 k. Defenses; Immunity and Good Faith. Most Cited Cases

Issue of whether detectives, who arrested suspect without a warrant for murder charges that were later dismissed, were protected by qualified immunity from suspect's § 1983 action challenging arrest was for jury; material issue of fact existed as to whether reasonable officers would have relied on information in detectives' possession without further verification. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983; West's Ann.Cal.Penal Code §§ 187, 664.

[28] Civil Rights 78 ⇐1376(2)

78 Civil Rights
   78III Federal Remedies in General
      78k1372 Privilege or Immunity; Good Faith and Probable Cause
         78k1376 Government Agencies and Officers
            78k1376(2) k. Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General. Most Cited Cases

While all officers have an ongoing duty to make appropriate inquiries regarding the facts received or to further investigate if sufficient details are relayed, where an officer has an objectively reasonable, good-faith belief that he is acting pursuant to proper authority, he is protected by qualified immunity no matter if the information supplied by other officers turns out to be erroneous; the lynchpin is whether the officer's reliance on the information was objectively reasonable.

[29] Civil Rights 78 ⇐1376(6)

78 Civil Rights
   78III Federal Remedies in General
      78k1372 Privilege or Immunity; Good Faith and Probable Cause
         78k1376 Government Agencies and Officers
            78k1376(6) k. Sheriffs, Police, and Other Peace Officers. Most Cited Cases

Detective who was least involved in investigation of shooting from vehicle, and had been told by another detective that suspect had been positively identified as passenger in vehicle, had objectively reasonable good-faith belief that probable cause existed for arrest of suspect, as required to establish detective's qualified immunity from suspect's Fourth Amendment claim based on his warrantless arrest on murder charges that were later dismissed; detective reasonably relied on allegedly false statement by other detective regarding suspect's identification. U.S.C.A. Const.Amend. 4; West's Ann.Cal.Penal Code §§ 187, 664.

[30] Federal Civil Procedure 170A ⇐1278

170A Federal Civil Procedure
   170AX Depositions and Discovery
      170AX(A) In General
         170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases

Testimony on behalf of detectives by expert, who was called as gang specialist and was regularly employed to give expert opinions in court about gangs, was inadmissible in suspect's § 1983 action challenging his warrantless arrest for murder and attempted murder charges that were later dismissed; expert failed to provide written expert report to suspect. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rules 26(a)(2)(A, B), 37(c), 28 U.S.C.A.; West's Ann.Cal.Penal Code §§ 187, 664.

[31] Federal Civil Procedure 170A ⇐1274

170A Federal Civil Procedure
   170AX Depositions and Discovery
      170AX(A) In General
         170Ak1272 Scope
            170Ak1274 k. Evidentiary Matters. Most Cited Cases

Under rules governing expert testimony, parties are not required to articulate how they would be prejudiced if they were not provided an expert witness report. Fed.Rules Civ.Proc.Rules 26(a)(2)(A, B), 37(c)(1), 28 U.S.C.A.

[32] Federal Civil Procedure 170A ⇐1278

170A Federal Civil Procedure
   170AX Depositions and Discovery
      170AX(A) In General
         170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:06-cv-10514-RGS   Document 173-7   Filed 12/03/08   Page 7 of 18

--- F.3d ----                                                                                       Page 7
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))

In determining whether sanction of excluding expert testimony based on failure to provide expert report should be imposed, the burden is on the party facing the sanction to demonstrate that the failure to comply with expert testimony rules is substantially justified or harmless. Fed.Rules Civ.Proc.Rules 26(a)(2)(A, B), 37(c)(1), 28 U.S.C.A.

Nelson E. Brestoff (argued), Moskowitz, Brestoff, Winston & Blinderman, LLP, Valencia, CA, Julia A. Follansbee, Follansbee & Associates, Bend, OR, for the plaintiffs-appellants.
Rockard J. Delgadillo, Janet G. Bogigian, Amy Jo Field (argued), Los Angeles City Attorney's Office, Los Angeles, CA, for the defendants-appellees.

Appeal from the United States District Court for the Central District of California; R. Gary Klausner, District Judge, Presiding. D.C. No. CV-05-04171-RGK.

Before: BETTY B. FLETCHER and N. RANDY SMITH, Circuit Judges, and SAMUEL P. KING,[FN*] District Judge.

ORDER AND OPINION

B. FLETCHER, Circuit Judge:

ORDER

*1 The Opinion filed August 26, 2008, slip op. 11723, and appearing at 540 F.3d 1031, 2008 WL 3905411 (9th Cir. Aug.26, 2008), is withdrawn. It may not be cited as precedent by or to this court or any district court of the Ninth Circuit.

The panel has voted to deny the petition for panel rehearing. Judge N.R. Smith votes to deny the petition for rehearing en banc and Judges B. Fletcher and King so recommend.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are denied.

The new Opinion is filed contemporaneously with this order. There is no change in substance.

No new petition for rehearing or rehearing en banc will be entertained.

OPINION

In 2004, plaintiff Raymond Torres, who was then 16 years old, was arrested, without a warrant, on charges of murder and attempted murder. After 162 days of incarceration, Torres was released when the district attorney dismissed the charges against him. Following his release, Torres and his mother ("Plaintiffs") brought a civil rights action against the City of Los Angeles, the Los Angeles Police Department ("LAPD"), and four LAPD detectives ("Defendants"), seeking damages under both federal and state law. After granting summary judgment to the City of Los Angeles and the LAPD, the district court denied two of Plaintiffs' motions in limine and, after all of the parties had presented their evidence to the jury, granted the remaining Defendants' motion for judgment as a matter of law. Plaintiffs appeal the grant of the motion for judgment as a matter of law as well as the rulings on the motions in limine. We affirm in part, reverse in part, and remand.

I.

The charges leading to Torres' arrest arose from a gang-related shooting in Los Angeles on August 11, 2004. On that day, Josue Santillan, a member of the Canoga Park Alabama street gang ("CPA gang"), was driving a car that contained four other passengers: Diana H., who was seated in the front right passenger seat; Joel Castaneda, who was seated in the back seat directly behind Diana; and two other persons, at least one of them male, who were also seated in the back seat.[FN1]

At one point Santillan drove by a park in the Reseda area, where, according to Diana and other witnesses, the male passengers flashed gang hand signs and shouted challenges at members of the Reseda street gang who were in the park. Santillan then drove away, but the members of the Reseda gang gave chase in a car of their own. When the Reseda gang members' car pulled alongside the car driven by Santillan, Castaneda fired several rounds from a semiautomatic pistol at the Reseda gang members'

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:06-cv-10514-RGS   Document 173-7   Filed 12/03/08   Page 8 of 18

--- F.3d ----                                                                                           Page 8
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))

car, killing the driver and wounding another passenger.

Detectives Roberts, Hickman, Park and Rains investigated the shooting. On August 25, 2004, two weeks after the shooting, Detectives Roberts and Hickman questioned Diana about the shooting. Diana identified Santillan as the driver and Castaneda as the shooter, and both were subsequently arrested. Diana also expressed her belief that all the male passengers were probably members of the CPA gang.

*2 Detectives Roberts and Hickman asked Diana about the third male passenger who had been sitting directly behind Santillan. Diana told the detectives that she had never seen him before, that she did not know his name, and that she did not remember him well because she had not been paying attention to him. However, Diana was able to describe this third male passenger as Hispanic, 15 or 16 years old, with a complexion darker than hers, and very overweight. Diana also stated that he had some hair. She further described him as having worn a white T-shirt, blue shorts, and white tennis shoes. Detective Roberts acknowledged at trial that Diana's description was "too generic to go anywhere with it."

On September 23, 2004, six weeks after the shooting, the detectives obtained several additional pieces of information in their investigation of the third male passenger, which led them to arrest Torres that same day.

First, Detective Hickman spoke to Danny Steinberg, a school police officer assigned to El Camino High School. Previously, Steinberg had been questioned by an LAPD Juvenile Officer, Marie Lamar, about an outstanding suspect in a murder case. Officer Lamar had described the suspect as a short and heavy-set Hispanic male with a shaved head who was "dressed down gang-style."[FN2] Steinberg had informed Officer Lamar that her description matched a student at El Camino-Torres-and that Torres had recently begun hanging out with gang members at El Camino and had begun "dressing down as a gangster" and shaving his head. On September 23, Steinberg repeated the same information to Detective Hickman. There was conflicting testimony at trial, however, as to whether Steinberg also told Officer Lamar and Detective Hickman that Torres had "recently been jumped into the CPA gang," i.e., that Torres had become a member of the gang.

Second, Detectives Hickman and Roberts spoke to an official at El Camino high school, Mark Pomerantz. Pomerantz gave the detectives two color photos of Torres, one older, in which Torres is shown with short dark hair, and the other taken that morning at the detectives' request, in which Torres is shown with a shaven head. In addition, Pomerantz discussed with the detectives a group photo of six young Hispanic males-including Torres and Santillan-that Pomerantz had provided the LAPD a year earlier when it was investigating Santillan in connection with another shooting of a Reseda gang member. The group photo had been taken by a teacher at a school event called "Melody of Words," although Detective Roberts testified at trial that he was unaware of that fact at the time of Torres' arrest.

When Pomerantz originally provided the group photo he had informed the LAPD that two of the individuals in the photo (neither of them Torres) were members of the CPA gang. On September 23, Pomerantz told the detectives that Torres and Santillan were friends and hung out. In the group photo, Torres' right hand is not visible and only part of one finger of his left hand is visible. Conflicting testimony was presented at trial as to whether Torres is making a gang sign with his left hand. However, Detectives Roberts and Park both testified that, at the time of Torres' arrest, they were unaware one way or the other whether Torres was a member of the CPA gang.

*3 In all three photos provided by Pomerantz, Torres is wearing a prominent grey metal cross on a chain around his neck. Pomerantz also told Detective Hickman that Torres "always wears [a] grey metal cross on a chain around his neck." Notably, Diana did not say anything about the third male passenger in the car wearing a chain or cross when the detectives spoke to her on August 25, 2004.

Third, Detective Hickman searched Torres' name in six different databases: an adult criminal records database, a juvenile records database, a Department of Motor Vehicles records database, the California Criminal History Record System, the Cal-Gangs database, and the gang card file at the West Valley police station. Detective Hickman found no matches for Torres.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Fourth, Detective Hickman used the most recent photo of Torres she had received from Pomerantz to assemble a photographic identification array of six individuals called a "six-pack." [FN3] Detective Hickman used a computer database to find photos of five other individuals to place in the six-pack, which she did by searching for photos based on age and physical characteristics also applicable to Torres. However, while Detective Hickman first searched for photos of persons who were not only young male Hispanics but also "heavy," that search did not yield a sufficiently large selection to fill the six-pack with faces that Detective Hickman considered to be similar to that of Torres. Accordingly, Detective Hickman expanded her search to include non-heavy persons, which did yield a sufficient large selection. Plaintiffs' police procedures expert testified at trial that the resulting six-pack was unduly suggestive because aside from Torres' photo only one other photo was of a visibly "chubby" person, thus significantly increasing the odds that Diana would "identify" Torres in the lineup.

Detectives Roberts, Park and Rains then proceeded to the residence of Diana. Detectives Roberts and Park went inside to show Diana the six-pack; Detective Rains waited outside in his car. Detective Roberts told Diana that he "had possibly identified the 15- to 16-year old chubby boy" and then read her a standard "photographic show-up admonition."

After Detective Roberts handed Diana the six-pack, Diana stared at it-according to Diana for between five and ten minutes-whereupon Detective Roberts asked her at whom she was staring. Diana then indicated that she was staring at photo # 6, the photo of Torres. However, there was conflicting testimony as to whether Diana also stated that the person in photo # 6 was the third male passenger in the car, or, on the contrary, whether she stated that she did not know whether it was him or not. It is undisputed, however, that the detectives then asked Diana to write down what she thought, whereupon Diana circled the photo of Torres with a pen and wrote on the six-pack, "I circle the person in # 6 because he looks more likely [sic] to the other guy in the car."Detective Roberts acknowledged at trial that, based solely on what Diana wrote on the six-pack, he did not have probable cause to arrest Torres.

*4 When Detectives Roberts and Park rejoined Detective Rains outside Diana's home, Detective Roberts told Rains that Diana had identified Torres as the third male passenger-a statement which Diana testified at trial was false-and said they were going to arrest Torres. Detective Rains was not shown Diana's written statement on the six-pack. Detectives Roberts, Park and Rains then went to Torres' home. When Torres came outside and the detectives approached him, Torres did not try to flee. The detectives engaged in no conversation with Torres but simply arrested him in his mother's presence. Detective Park acknowledged at trial that at the time of Torres' arrest there was no physical evidence linking Torres to the shooting.

Torres was charged with murder and attempted murder based on his alleged role in the shooting of the two Reseda gang members. However, on March 4, 2005, after 162 days of incarceration, Torres was released when the district attorney dismissed the charges against him.

Torres and his mother subsequently filed suit, claiming deprivation of Torres' Fourth Amendment rights, in violation of 42 U.S.C. § 1983, as well as false arrest and negligent infliction of emotional distress, in violation of California law. Defendants moved for partial summary judgment on Plaintiffs' claims against the City of Los Angeles and the LAPD on the ground that Plaintiffs could not prove liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In their motion, Defendants stated that "[b]ecause triable issues of material fact exist regarding probable cause for Plaintiff's arrest, Defendants move for partial summary judgment on *Monell* liability only."The district court granted the motion, a ruling Plaintiffs do not appeal.

On the eve of trial against the remaining Defendants, the district court denied two of Plaintiffs' motions in limine: a motion for an order barring Defendants' expert witnesses Detective Jack Giroud and Officer Norm Peters from testifying on the ground that they had failed to provide written expert reports as required by Federal Rule of Civil Procedure 26(a)(2)(B); and a motion for an order barring the investigating detectives and all defense experts from testifying that, in their opinion, probable cause existed to arrest Torres.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:06-cv-10514-RGS  Document 173-7  Filed 12/03/08  Page 10 of 18

--- F.3d ----
Page 10
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))

After all of the parties had presented their evidence to the jury, Defendants orally moved for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a), as to all of Plaintiffs' claims. The district court granted the motion and dismissed Plaintiffs' case. In its written order, the district court concluded that Detectives Hickman and Rains had not been involved in Torres' arrest and therefore could not be liable. The court further concluded that Detectives Park and Roberts had probable cause to arrest Torres and that, accordingly, Plaintiffs' § 1983 claim and state law claims should be dismissed.[FN4] Finally, the court concluded that even if Detectives Park and Roberts did not have probable cause to arrest Torres, they were protected from Plaintiffs' § 1983 claim by qualified immunity.[FN5]

II.

*5 [1][2][3][4] We review de novo the district court's order granting Defendants' motion for judgment as a matter of law under Rule 50(a). See Santos v. Gates, 287 F.3d 846, 851 (9th Cir.2002)."Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion."Id. In other words, "[a] motion for a judgment as a matter of law is properly granted only if no reasonable juror could find in the non-moving party's favor." El-Hakem v. BJY Inc., 415 F.3d 1068, 1072 (9th Cir .2005)."The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." LaLonde v. County of Riverside, 204 F.3d 947, 959 (9th Cir.2000)."If conflicting inferences may be drawn from the facts, the case must go to the jury."Id.

[5][6] We also review de novo the district court's finding of probable cause, Rosenbaum v. City and County of San Francisco, 484 F.3d 1142, 1161 n. 14 (9th Cir.2007), as well as its grant of qualified immunity, Aguilera v. Baca, 510 F.3d 1161, 1167 (9th Cir.2007). We review for an abuse of discretion the district court's evidentiary rulings. Janes v. Wal-Mart Stores, Inc., 279 F.3d 883, 886 (9th Cir.2002).

III.

A.

[7] We affirm the district court's dismissal of Plaintiffs' case against Detective Hickman. The evidence is undisputed that Detective Hickman was not present when Torres was arrested, and there is no evidence that Detective Hickman instructed the other detectives to arrest Torres or that any of those detectives consulted with her before making the arrest. Thus, there is no evidence of "integral participation" by Detective Hickman in the alleged constitutional violation. Chuman v. Wright, 76 F.3d 292, 294-95 (9th Cir.1996); see Blankenhorn v. City of Orange, 485 F.3d 463, 481 n. 12 (9th Cir.2007) (explaining that integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation" and affirming summary judgment in favor of officer who arrived on the scene after the allegedly unconstitutional arrest and officer who provided only crowd control (citing Boyd v. Benton County, 374 F.3d 773, 780 (9th Cir.2004)); Motley v. Parks, 432 F.3d 1072, 1082 (9th Cir.2005) (en banc) (affirming grant of summary judgment in favor of government agent who did not participate in the allegedly unconstitutional search).

[8] Moreover, although Detective Park testified that Detective Hickman, together with Detective Roberts, was in charge of the investigation of the shooting, there is no evidence that Detective Hickman acted as a supervisor that would impose supervisor liability. See Motley, 432 F.3d at 1081 ("A supervisor can be liable under § 1983 if he 'set[s] in motion a series of acts by others ..., which he knew or reasonably should have known, would cause others to inflict the constitutional injury.'" (modifications in original) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.1991)).

B.

*6 Plaintiffs argue that the district court erred in concluding, as a matter of law, that Detectives Roberts, Park and Rains had probable cause to arrest Torres.[FN6]

[9][10][11]"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir.2007)

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:06-cv-10514-RGS   Document 173-7   Filed 12/03/08   Page 11 of 18

--- F.3d ----                                                                                             Page 11
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))

(citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964))."While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, '[m]ere suspicion, common rumor, or even strong reason to suspect are not enough.' " *Id.* (quoting *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir.1984)). Under the collective knowledge doctrine, in determining whether probable cause exists for arrest, we look to "the collective knowledge of all the officers involved in the criminal investigation[.]" *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir.2007) (internal quotation marks omitted).

[12][13][14][15][16][17][18] As the definition of probable cause indicates, the proper inquiry is whether the detectives had probable cause to believe that Torres had committed a crime, not merely that Torres was the third male passenger in the car.[FN7] While probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest, *see Devenpeck v. Alford*, 543 U.S. 146, 153-55, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004); *see also Virginia v. Moore*, --- U.S. ----, ----, 128 S.Ct. 1598, 1604, 170 L.Ed.2d 559 (2008), an arrest is still unlawful unless probable cause existed under a specific criminal statute, *see Devenpeck*, 543 U.S. at 156. Defendants do not contend that there was probable cause to believe that Torres had committed any offense besides murder and attempted murder. In California, both offenses require an unlawful killing with malice aforethought, *see*Cal.Penal Code §§ 187, 664, although malice is implied "when a killing results from an intentional act, the natural consequences of which are dangerous to human life, and the act is deliberately performed with knowledge of the danger to, and with conscious disregard for, human life[,]" *People v. Cook*, 39 Cal.4th 566, 47 Cal.Rptr.3d 22, 139 P.3d 492, 515 (Cal.2006) (citation omitted). Therefore, the question is whether the detectives had probable cause to believe that Torres had acted in concert with the shooter, Castaneda, with conscious disregard for human life.[FN8]

In reviewing the grant of a motion for judgment as a matter of law, we must determine whether a reasonable jury could have concluded that the detectives lacked probable cause to arrest Torres. *See, e.g., Monroe v. City of Phoenix, Arizona*, 248 F.3d 851, 861-62 (9th Cir.2001) (affirming denial of Rule 50(a) motion in excessive force case because"[a] reasonable jury could conclude that [the defendant officer] had probable cause to believe that [the plaintiff] posed a threat of serious physical harm"), *overruled on other grounds as recognized in Acosta v. Hill*, 504 F.3d 1323, 1324 (9th Cir.2007). Defendants concede that, because we must view the evidence in the light most favorable to Plaintiffs and draw all reasonable inferences in their favor, we must assume the following: that school police officer Steinberg did not tell Officer Lamar or Detective Hickman that Torres had "recently been jumped into the CPA gang"; that in the group photo Torres is not visibly making a gang sign (or that it was unreasonable for the detectives to conclude that he is); and that Diana did not positively identify Torres as the third male passenger in the car.

*7 [19] We conclude that, based on the information in the detectives' possession at the time of the arrest, a reasonable jury could have found that the detectives lacked probable cause to believe that Torres had been the third male passenger in the car and had acted in concert with the shooter with conscious disregard for human life.

[20] First, Diana's general description of the third male passenger is not sufficient to create probable cause. " 'Under the law of this Circuit, mere resemblance to a general description is not enough to establish probable cause.' " *Lopez*, 482 F.3d at 1073 (quoting *Grant v. City of Long Beach*, 315 F.3d 1081, 1088 (9th Cir.2002), *amended by* 334 F.3d 795 (9th Cir.2002). For example, in *United States v. Ricardo D.*, we held that the fact that the defendant matched descriptions of the crime suspect as a "young, thin man, not too tall" and a "young, Mexican male" were insufficient to create probable cause. 912 F.2d 337, 342 (9th Cir.1990). Here, Diana's description of the third male passenger was slightly more detailed than the description in *Ricardo D.* but, at the same time, did not match Torres insofar as Diana described the third male passenger as having some hair. Moreover, the fact that Diana did not mention a chain or cross around the passenger's neck casts further doubt on whether Torres matched Diana's general description. Accordingly, Diana's description alone was clearly insufficient to create probable cause as a matter of law.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:06-cv-10514-RGS   Document 173-7   Filed 12/03/08   Page 12 of 18

--- F.3d ----
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))

Page 12

Second, a reasonable jury could have found that Diana's "identification" of Torres in the six-pack did not create probable cause because the six-pack was suggestive and the "identification" was not sufficiently reliable. See Grant, 315 F.3d at 1086-88 (holding that two identifications did not create probable cause as a matter of law because six-pack was arguably suggestive and identifications lacked sufficient indicia of reliability).

The Supreme Court has cautioned that "[a] major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification." United States v. Wade, 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Here, only one other photo in the six-pack besides the photo of Torres was of a visibly overweight individual and thus of a person who fit Diana's general description. In addition, Detective Roberts told Diana, before handing her the six-pack, that the detectives had "possibly identified the 15 to 16 year-old chubby boy."According to Plaintiffs' expert, that statement was "absolutely forbidden" and "contamine[d] the identification," presumably because it informed Diana that the detectives' suspect was among the photos in the six-pack and thus could have pressured her to make an identification. Based on these facts, a reasonable jury could have found the six-pack to be impermissibly suggestive.

*8 [21] Although a suggestive photo array "may still serve as a basis for probable cause if sufficient indicia of reliability are present," Grant, 315 F.3d at 1087 (citing United States v. Hanigan, 681 F.2d 1127, 1131 (9th Cir.1982)), here a reasonable jury could have found that no sufficient indicia of reliability were present. "Indicia of reliability include: 1) the opportunity to view the criminal at the time of the crime; 2) the degree of attention paid to the criminal; 3) the accuracy of the prior descriptions of the criminal; 4) the level of certainty demonstrated at the time of the confrontation; and 5)[ ] the length of time between the crime and the confrontation."Id. (citing Gray v. Klauser, 282 F.3d 633, 639 (9th Cir.2002)). While Diana spent several hours in the car with the third male passenger, she had never seen him before and did not pay attention to him. In addition, as previously discussed, Diana gave only a general description of the third male passenger, which did not match Torres in two important respects (head of hair and no mention of prominent cross). Further, Diana was not shown the six-pack until six weeks after the shooting. When she was handed the six-pack, she stared at it in silence for between five and ten minutes and then, when asked at whom she was staring, made only a *comparative* identification: she stated that Torres looked more like the third male passenger than the other persons depicted in the six-pack (only one of whom was visibly overweight), but that she was not sure whether or not it actually was him. Thus, a reasonable jury could have concluded that Diana's identification lacked sufficient indicia of reliability and thus did not provide the detectives with probable cause. Although Detective Rains had been told that Diana had positively identified Torres, we nevertheless conclude that the reliability of the identification was sufficiently questionable for other reasons to allow a reasonable jury to conclude that Rains, too, lacked probable cause.

While the detectives also had the additional information that Torres was friends with Santillan, hung out with gang members, and had recently begun "dressing down as a gangster," they had no information that Torres was actually a member of the CPA gang (or any other gang), and Torres' name did not come up in any of the six criminal databases searched by Detective Hickman. Moreover, although fingerprints of Santillan were found in the car, there was no physical evidence linking Torres to the vehicle. In addition, the fact that Torres made no attempt to flee when the detectives came to arrest him, while by no means dispositive, further indicates that reasonable minds could disagree about the existence of probable cause. See Ricardo D., 912 F.2d at 342.

Finally, the detectives lacked evidence that the third male passenger had acted in concert with Castaneda and had the requisite mental state to be guilty of murder and attempted murder. There is no evidence that the third male passenger helped decide or make plans to challenge or shoot at rival gang members; that he knew that Castaneda had a gun; or that he assisted Castaneda in firing the shots. Thus, aside from the evidence that the third male passenger had flashed gang signs and shouted challenges, there was no evidence that the third male passenger had acted in concert with Castaneda and had done so with a

Case 1:06-cv-10514-RGS   Document 173-7   Filed 12/03/08   Page 13 of 18

--- F.3d ----                                                                      Page 13
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))

conscious disregard for human life. This dearth of evidence as to the third male passenger's culpability further widens the gap between mere suspicion and probable cause to believe that Torres had committed a crime.

*9 Accordingly, we conclude that a reasonable jury could have found that Detectives Roberts, Park and Rains lacked probable cause to believe that Torres had committed a crime. The district court therefore erred in finding probable cause as a matter of law.

C.

[22] We next consider whether Detectives Roberts, Park and Rains were nevertheless protected by qualified immunity. When a police officer asserts qualified immunity, we apply a two-part analysis under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The first question is whether the facts, when taken in the light most favorable to Plaintiffs, show that Defendants' conduct violated a constitutional right. *Id.* at 201. The second question is whether the constitutional right at issue is "clearly established." *Id.* at 202.

As Defendants argue, qualified immunity is a question of law, not a question of fact. *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). But Defendants are only entitled to qualified immunity as a matter of law if, taking the facts in the light most favorable to Torres, they violated no clearly established constitutional right. The court must deny the motion for judgment as a matter of law if reasonable jurors could believe that Defendants violated Torres' constitutional right, and the right at issue was clearly established.

[23][24] Plaintiffs here appeal the grant of a Rule 50(a) motion made after completion of the trial but before a jury verdict. While the Supreme Court has encouraged resolution of the qualified immunity issue early on in the lawsuit, such as at the summary judgment stage, *see Saucier*, 533 U.S. at 200 ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."), Defendants chose not to move for summary judgment on qualified immunity grounds, acknowledging that "triable issues of material fact exist regarding probable cause for Plaintiff's arrest."Thus, the case proceeded to trial before a jury. However, the same issues of material fact also prevent the court from granting the officers' motion for judgment as a matter of law. *See, e.g., Grant*, 315 F.3d at 1090 (denying officers' motion for judgment as a matter of law on qualified immunity because "viewed in the light most favorable to the non-moving party, there was enough evidence for a reasonable jury to conclude that reasonable officers would not have acted as [the defendants] did in arresting[the plaintiff]."); *LaLonde*, 204 F.3d at 953 ("If ... there is a material dispute as to the facts regarding what the officer or the plaintiff actually did, the case must proceed to trial, before a jury if requested."(citing *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993)); *Thompson v. Mahre*, 110 F.3d 716, 719 (9th Cir.1997) ("[W]here there is a genuine issue of fact on a substantive issue of qualified immunity, ordinarily the controlling principles of summary judgment and, if there is a jury demand and a material issue of fact, the Seventh Amendment, require submission to a jury."); *see also Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir.1994) (explaining that the reasons for the existence of the qualified immunity doctrine "do not ... suggest that a *judicial* determination at [the trial] stage is necessarily better than a jury verdict" (emphasis in original)).[FN9] Indeed, we have explained that "sending the factual issues to the jury but reserving to the judge the ultimate 'reasonable officer' determination leads to serious logistical difficulties." *Sloman*, 21 F.3d at 1468.

*10 Defendants contend that our decision in *Peng v. Mei Chin Penghu*, 335 F.3d 970 (9th Cir.2003), supports their contention that a court, not a jury, must decide the qualified immunity issue here. We disagree. In *Peng*, the district court had determined at the summary judgment stage that the defendant officer was entitled to qualified immunity. *Id.* at 972-73. On appeal, Peng argued, first, that the existence of disputes of fact precluded the district court from granting summary judgment on the issue of qualified immunity, and, second, that because more than one reasonable inference could be drawn from the undisputed facts regarding the existence of probable cause, the question of probable cause was one for the jury and not the court. *Id.* at 978-79. Rejecting both arguments, this court held that the factual disputes were not material to the qualified immunity issue, *id.*, and that, "*where the material, historical facts are not*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:06-cv-10514-RGS   Document 173-7   Filed 12/03/08   Page 14 of 18

--- F.3d ----                                                                                            Page 14
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
**(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))**

*in dispute,* and the only disputes involve what inferences properly may be drawn from those historical facts, it is appropriate for this court to decide whether probable cause existed at the time [the officer] arrested Peng," *id.* at 979-80 (emphasis added).

However, in this case historical facts material to the qualified immunity determination are in dispute. Disputes of fact exist as to whether Diana positively identified Torres, whether school police officer Steinberg told Officer Lamar and/or Detective Hickman that Torres had "recently been jumped into the CPA gang," and whether it was reasonable for the detectives to believe that in the group photo Torres was making a gang sign despite the fact that only one of Torres' fingers is visible in the photo. These disputes of fact are material because they go to what the detectives knew at the time they arrested Torres and, accordingly, to whether they had probable cause, and reasonably believed they had probable cause, to do so. Taking these facts in the light most favorable to Torres, a reasonable officer would have known that he lacked probable cause for the arrest. Accordingly, *Peng* does not help Defendants.

[25][26] With respect to the first *Saucier* question, we have already determined that a reasonable jury could find that Defendants violated Torres' constitutional right to be free from arrest without probable cause. *See Grant,* 315 F.3d at 1089 ("Courts have long held that the Fourth Amendment requires probable cause before an officer may arrest an individual."(citing *Beck,* 379 U.S. at 91)). In answering the second question, whether the constitutional right was clearly established, we do not consider the right as a "general proposition." *Saucier,* 533 U.S. at 201. Rather, "[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202."Qualified immunity is an objective inquiry-whether the officers subjectively believed that they had probable cause to arrest [Torres] is irrelevant." *Grant,* 315 F.3d at 1089 (citing *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

*11 [27] In light of the arguably suggestive six-pack, Diana's merely comparative identification six weeks after the shooting, the lack of direct evidence that Torres was a member of a gang (let alone the CPA gang), the lack of physical evidence tying Torres to the shooting, the fact that Torres did not attempt to flee when the detectives approached him, and the lack of evidence that the third male passenger acted in concert with Castaneda with conscious disregard for human life, "[a] material issue of fact existed as to whether a reasonable officer would have relied on [the information in the detectives' possession] without further verification." *Grant,* 315 F.3d at 1090. Accordingly, "there was enough evidence for a reasonable jury to conclude that reasonable officers would not have acted as [Detectives Roberts and Park] did in arresting [Torres]."*Id.*We therefore conclude that Detectives Roberts and Park were not entitled to qualified immunity as a matter of law.

However, we reach a different conclusion as to Detective Rains. Because Detective Roberts told Rains that Diana had identified Torres and because he did not show Rains Diana's written statement on the six-pack, Rains believed that Diana had positively identified Torres.

[28] While "[a]ll officers ... have an ongoing duty to make appropriate inquiries regarding the facts received or to further investigate if sufficient details are relayed," *Motley,* 432 F.3d at 1081 (citation omitted), we have explained that"[w]here an officer has an objectively reasonable, good-faith belief that he is acting pursuant to proper authority, he cannot be held liable if the information supplied by other officers turns out to be erroneous." *id.* at 1082 (citing *United States v. Hensley,* 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985))."The lynchpin is whether the officer's reliance on the information was objectively reasonable."*Id.*

[29] In light of what Detective Roberts told Detective Rains after showing the six-pack to Diana, and in light of the undisputed fact that, of the four detectives, Detective Rains was the least involved in the investigation, we conclude as a matter of law that Detectives Rains reasonably relied on the (allegedly false) statement by Detective Roberts that Diana had identified Torres. Based on this conclusion, we further conclude as a matter of law that a reasonable officer in Rains' position would have believed he had probable cause to arrest Torres. Accordingly, Detective Rains was entitled to qualified immunity as a matter of law.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----                                                                 Page 14
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
**(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))**

*in dispute,* and the only disputes involve what inferences properly may be drawn from those historical facts, it is appropriate for this court to decide whether probable cause existed at the time [the officer] arrested Peng," *id.* at 979-80 (emphasis added).

However, in this case historical facts material to the qualified immunity determination are in dispute. Disputes of fact exist as to whether Diana positively identified Torres, whether school police officer Steinberg told Officer Lamar and/or Detective Hickman that Torres had "recently been jumped into the CPA gang," and whether it was reasonable for the detectives to believe that in the group photo Torres was making a gang sign despite the fact that only one of Torres' fingers is visible in the photo. These disputes of fact are material because they go to what the detectives knew at the time they arrested Torres and, accordingly, to whether they had probable cause, and reasonably believed they had probable cause, to do so. Taking these facts in the light most favorable to Torres, a reasonable officer would have known that he lacked probable cause for the arrest. Accordingly, *Peng* does not help Defendants.

[25][26] With respect to the first *Saucier* question, we have already determined that a reasonable jury could find that Defendants violated Torres' constitutional right to be free from arrest without probable cause. *See Grant,* 315 F.3d at 1089 ("Courts have long held that the Fourth Amendment requires probable cause before an officer may arrest an individual."(citing *Beck,* 379 U.S. at 91)). In answering the second question, whether the constitutional right was clearly established, we do not consider the right as a "general proposition." *Saucier,* 533 U.S. at 201. Rather, "[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202."Qualified immunity is an objective inquiry-whether the officers subjectively believed that they had probable cause to arrest [Torres] is irrelevant." *Grant,* 315 F.3d at 1089 (citing *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

*11 [27] In light of the arguably suggestive six-pack, Diana's merely comparative identification six weeks after the shooting, the lack of direct evidence that Torres was a member of a gang (let alone the CPA gang), the lack of physical evidence tying Torres to the shooting, the fact that Torres did not attempt to flee when the detectives approached him, and the lack of evidence that the third male passenger acted in concert with Castaneda with conscious disregard for human life, "[a] material issue of fact existed as to whether a reasonable officer would have relied on [the information in the detectives' possession] without further verification." *Grant,* 315 F.3d at 1090. Accordingly, "there was enough evidence for a reasonable jury to conclude that reasonable officers would not have acted as [Detectives Roberts and Park] did in arresting [Torres]."*Id.*We therefore conclude that Detectives Roberts and Park were not entitled to qualified immunity as a matter of law.

However, we reach a different conclusion as to Detective Rains. Because Detective Roberts told Rains that Diana had identified Torres and because he did not show Rains Diana's written statement on the six-pack, Rains believed that Diana had positively identified Torres.

[28] While "[a]ll officers ... have an ongoing duty to make appropriate inquiries regarding the facts received or to further investigate if sufficient details are relayed," *Motley,* 432 F.3d at 1081 (citation omitted), we have explained that"[w]here an officer has an objectively reasonable, good-faith belief that he is acting pursuant to proper authority, he cannot be held liable if the information supplied by other officers turns out to be erroneous." *id.* at 1082 (citing *United States v. Hensley,* 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985))."The lynchpin is whether the officer's reliance on the information was objectively reasonable."*Id.*

[29] In light of what Detective Roberts told Detective Rains after showing the six-pack to Diana, and in light of the undisputed fact that, of the four detectives, Detective Rains was the least involved in the investigation, we conclude as a matter of law that Detectives Rains reasonably relied on the (allegedly false) statement by Detective Roberts that Diana had identified Torres. Based on this conclusion, we further conclude as a matter of law that a reasonable officer in Rains' position would have believed he had probable cause to arrest Torres. Accordingly, Detective Rains was entitled to qualified immunity as a matter of law.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:06-cv-10514-RGS   Document 173-7   Filed 12/03/08   Page 15 of 18

--- F.3d ----                                                                Page 15
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))

**D.**

We deal with the following evidentiary issues to guide the district court on remand. Plaintiffs contend that the district court abused its discretion in denying their motion in limine seeking to bar the testimony of Defendants' expert witnesses Detective Jack Giroud and Officer Norm Peters on the ground that Defendants failed to provide Plaintiffs written expert reports for those witness pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).

*12 Rule 26(a)(2)(B) provides that, "[u]nless stipulated or ordered by the court, [the disclosure of the identity of witnesses pursuant to Rule 26(a)(2)(A)] must be accompanied by a written report-prepared and signed by the witness-if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."Fed.R.Civ.P. 26(a)(2)(B). We have explained that "Rule 37(c)(1) gives teeth to [this requirement] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir.2001).[FN10]

[30] We agree with Plaintiffs that Officer Peters should not have been permitted to testify without providing a written expert report. Peters, whom Defendants called as a "gang specialist," testified that he was regularly employed to give expert opinions in court about gangs. Accordingly, Peters falls squarely in the category of witnesses to which Rule 26(a)(2)(B) applies.

[31] We reject Defendants' argument that Plaintiffs were required, but failed, to articulate how they would be prejudiced if they were not provided an expert witness report. Defendants advance two bases for their argument. First, they contend that the purpose of an expert report is "the elimination of unfair surprise to the opposing party and the conservation of resources," Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir.1995), and that because "Rule 26 focuses not on the status of the witness, but rather on the substance of the testimony," Patel v. Gayes, 984 F.2d 214, 218 (7th Cir.1993) (superseded on other grounds by amendment to the Federal Rules of Civil Procedure, as recognized in Musser v. Gentiva Health Servs., 356 F.3d 751, 757 n. 2 (7th Cir .2004)), Plaintiffs must articulate how the failure to provide them with an expert report led to surprise at trial. This contention fails. In Patel, the Seventh Circuit focused on the substance of the testimony rather than the status of the witness not to determine whether the party moving under Rule 26 would be prejudiced by the lack of an expert report but only to determine whether the witnesses in question were experts for purposes of Rule 26(a)(2)(B) or instead fell under the "treating physician" exception and therefore were not required to prepare an expert report in the first place. See Patel, 984 F.2d at 218. Thus, Patel does not support Defendants' argument.

[32] The second basis for Defendants' argument is that Rule 37(c)(1) provides that a party who fails to comply with Rule 26(a) may not use the witness in question to supply evidence at trial "unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1) (emphasis added). Based on this Rule, Defendants contend that Officer Peters could testify without providing an expert report because Plaintiffs failed to articulate how they would be prejudiced without such a report. This contention also fails. Rule 37(c)(1) provides a sanction for failure to comply with the disclosure requirements of Rule 26(a).SeeFed. R. Civ. P. 37 advisory committee's note, 1993 Amendments. In determining whether this sanction should be imposed, the burden is on the party facing the sanction-i.e., Defendants-to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless. See Yeti by Molly, Ltd., 259 F.3d at 1107 ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."). Thus, Plaintiffs were not required to articulate how they would be prejudiced by Defendants' failure to provide an expert report. Because the district court denied Plaintiffs' motion in limine without explanation, there is no basis for us to conclude that the failure to provide an expert report was substantially justified or harmless for purposes of Rule 37(c)(1).

*13 Therefore, we conclude that the district court abused its discretion in denying Plaintiffs' in limine motion. We instruct the court, on remand and upon proper motion by Plaintiffs, to require that Defendants, pursuant to Rule 26(a)(2)(B), provide Plaintiffs with an expert report prepared by Officer

Case 1:06-cv-10514-RGS   Document 173-7   Filed 12/03/08   Page 16 of 18

--- F.3d ----                                                                                                                         Page 16
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))

Peters if they wish to call him as an expert witness.

However, we do not reach the same conclusion with respect to Detective Giroud. While Defendants concede that Detective Giroud was an expert witness, not all expert witnesses must provide an expert report. By exclusion, Rule 26(a)(2)(B) contemplates that individuals who are employed by a party and whose duties do not regularly involve giving expert testimony need not provide an expert report. *See, e.g., Watson v. United States,* 485 F.3d 1100, 1107 (10th Cir.2007); *Bank of China, New York Branch v. NBM LLC,* 359 F.3d 171, 182 n. 13 (2d Cir.2004). We have found no evidence in the record that the duties of Detective Giroud, who was employed by the LAPD, regularly involved giving expert testimony. Accordingly, on this record, we cannot determine whether Rule 26(a)(2)(B) applied to him. We therefore leave it to the district court, on remand, to determine whether Rule 26(a)(2)(B) requires Defendants to provide Plaintiffs with an expert report prepared by Detective Giroud. [FN11]

IV.

We affirm the district court's dismissal of Plaintiffs' case against Detective Hickman and of Plaintiffs § 1983 claim against Detective Rains.[FN12] We reverse the grant of judgment as a matter of law as to Detectives Roberts and Park. We reverse in part the denial of Plaintiffs' in limine motions.

Plaintiffs are awarded costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

FN* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

FN1. Diana, who was the detectives' main source of information about the shooting, gave different accounts of who was in the car other than herself, Santillan and Castaneda. At first she stated that only one other person, a male, was in the car; later she stated that two other persons were in the car, one male and one female; and later still she stated that only two other males were in the car.

FN2. The record does not reveal how Officer Lamar had come to believe that the third male passenger had a shaved head and was "dressed down gang-style."

FN3. In the six-pack, the photo of Torres is cropped such that the cross hanging from Torres' neck chain is not visible.

FN4. The district court dismissed Plaintiffs' state law claim for negligent infliction of emotional distress because it was predicated on their claims for violation of civil rights and false arrest.

FN5. In its written order, the district court made findings of fact and reached conclusions of law as "required by Rule 52 of the Federal Rules of Civil Procedure." This was error because the case was being tried to a jury. *See* Fed.R.Civ.P. 52(a)(1) ("*In an action tried on the facts without a jury or with an advisory jury,* the court must find the facts specially and state its conclusions of law separately." (emphasis added)). Instead, the court should have determined only whether "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the non-moving party. *See* Fed.R.Civ.P. 50(a)(1).

FN6. While the district court dismissed Plaintiffs' case against Detective Rains on the ground that "there was no evidence showing that Rains was involved in the arrest of Plaintiff" because "[a]ccording to the evidence, Rains was only acting as backup during Plaintiff's arrest and did not personally assist in or direct the arrest of Plaintiff," we disagree with this conclusion in light of Rains' own testimony that "I was involved in the arrest ."

FN7. Defendants assert that Plaintiffs' case "has always rested on whether there was probable cause to believe that [Torres] was the third suspect in [Diana's] vehicle," not on whether there was probable cause to believe that Torres was guilty of murder.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 1:06-cv-10514-RGS   Document 173-7   Filed 12/03/08   Page 17 of 18

--- F.3d ----                                                                                                                Page 17
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))

However, we consider only the latter question because an arrest is lawful under the Fourth Amendment only if it is accompanied by probable cause to believe that the arrestee has committed, or is committing, an offense. *See, e.g., Lopez, 482 F.3d at 1072.* Mere presence in a vehicle in which a crime is being committed is not an offense. *See United States v. Herrera-Gonzalez, 263 F.3d 1092, 1097-98 (9th Cir.2001)* ("Sometimes youthful inexperience and lack of common sense, impecuniousness, or personal relationships may bring the innocent into continuing proximity with the guilty, but our line of 'mere presence' cases requires acquittal in the absence of evidence of intentional participation.").

FN8. Defendants "presume" that Torres was arrested and charged with murder on a provocative act murder theory, a theory that can be applied in "situations in which criminal defendants neither kill nor intend to kill, but cause a third party to kill in response to their life-threatening provocative acts." *People v. Cervantes, 26 Cal.4th 860, 111 Cal.Rptr.2d 148, 29 P.3d 225, 230 (Cal.2001).* However, to the extent Defendants suggest that Torres' alleged flashing of gang signs and shouting of challenges, alone, could constitute the intentional act necessary for murder liability, we disagree. "To satisfy the 'actus reus' element of [provocative act murder] the defendant or one of his confederates must commit an act which provokes a third party into firing the fatal shot." *In re Aurelio R., 167 Cal.App.3d 52, 212 Cal.Rptr. 868, 870 (Cal.Ct.App.1985)*."[N]o criminal liability attaches to an initial remote actor for an unlawful killing that results from an independent intervening cause (i.e., a superseding cause)." *Cervantes, 111 Cal.Rptr.2d 148, 29 P.3d at 231.* Here, the evidence shows that Castaneda fired the shots not because he was provoked by his fellow passenger's flashing of gang signs and shouting of challenges, but rather by the fact that the Reseda gang members chased the car driven by Santillan.

FN9. As we noted in *Sloman,* when a case proceeds to trial "qualified immunity can no longer rightly be called an 'immunity from suit' (since the suit has already proceeded to its conclusion); rather, it is now effectively a defense." *21 F.3d at 1468 n. 6.*

FN10. Rule 37(c)(1) provides in relevant part:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.

Fed.R.Civ.P. 37(c)(1).

FN11. Keeping in mind that the inquiry is whether objectively the officers reasonably believed they had probable cause, we also agree with Plaintiffs that the district court abused its discretion in denying their motion in limine seeking to bar Defendants' witnesses from testifying as to their own opinion about whether there was probable cause to arrest Torres. *See Stuart v. United States, 23 F.3d 1483, 1487 (9th Cir.1994)* (upholding district court's ruling that barred plaintiff's expert from opining as to whether probable cause existed on the ground that the jury was more suited than the expert to answer the question); *see also Peterson v. City of Plymouth, 60 F.3d 469, 476 n. 10 (8th Cir.1995); Estes v. Moore, 993 F.2d 161, 163 (8th Cir.1998).* Defendants did not address this issue in their brief and effectively conceded the issue at oral argument. Accordingly, we instruct the district court, on remand, to bar Defendants' witnesses from testifying as to their opinion that they had probable cause to arrest Torres.

FN12. Because we conclude that a reasonable jury could have found that all Defendants, including Detective Rains, lacked probable cause to arrest Torres, Plaintiffs' California law claims against

Case 1:06-cv-10514-RGS   Document 173-7   Filed 12/03/08   Page 18 of 18

--- F.3d ----
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023
**(Cite as: 2008 WL 4878904 (C.A.9 (Cal.)))**

Page 18

Detective Rains, which are not affected by our conclusion that Rains is protected by qualified immunity, should not have been dismissed. *See Blankenhorn,* 485 F.3d at 489 (Berzon, J., concurring in part and dissenting in part); *Brown v. Li,* 308 F.3d 939, 955 (9th Cir.2002).

C.A.9 (Cal.),2008.
Torres v. City of Los Angeles
--- F.3d ----, 2008 WL 4878904 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 14,023

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.